## STILLMAN et al. v. UNITED STATES.
### No. 11381.

United States Court of Appeals
Ninth Circuit.
Oct. 27, 1949.

Rehearing Denied Nov. 28, 1949.

610

Morris Lavine, Los Angeles, Cal., for appellant.

James M. Carter, U. S. Atty., Ernest A. Tolin, Chief Asst. U. S. Atty., Norman W. Neukom, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before Denman, Chief Judge, BONE and Orr, Circuit Judges.

BONE, Circuit Judge.

Appellants, who were partners in a wholesale meat business, appeal from a judgment of conviction upon the verdict of a jury under an indictment (filed March 11, 1946) containing 50 counts, the first of which charged a conspiracy [1] to violate the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. (hereafter referred to as the Act). To the conspiracy count was appended a long list of claimed overt acts alleged as substantive offenses committed in furtherance and to effectuate the purposes and objects of the conspiracy. This count also referred to certain Maximum Price Regulations pertaining to the sale of meat, the most important of which was Regulation No. 169 pertaining to beef and veal.

The remaining 49 counts in the indictment charged substantive offenses of two types, i. e., willful charges in excess of the lawful maximum price allowed, and willful falsification of entries and documents required to be kept under the provisions of the Act and applicable Regulations. Regulations here involved were promulgated under the Act and included Maximum Price Regulations Nos. 148, 165, 169 and 239.

Twenty-seven counts charging substantive offenses were withdrawn, and as to these the court granted appellants' motion for judgment of acquittal.

Appellants were convicted on Count One and on the remaining (22) counts. Eleven of these counts charged sales of meat items at over-ceiling prices on specific dates from about August, 1944, through March, 1945, (under Regulation No. 169) and the remaining eleven counts charged false entries or falsification of records in a material respect, these offenses being committed from about September, 1944, through March, 1945, (under Regulations Nos. 148, 169 and 239).

Appellants attack their conviction on a broad front, presenting fifteen lengthy specifications of error. Their length forbids a verbatim repetition but the material issues they raise are considered in the light of arguments presented to support them.

The first assails the validity of the indictment. It is said to be void because of certain language appearing in the caption which reads as follows:

"Indictment
 Filed: Mar. 11, 1946
 Bond:
 No. 18,366
"Viol: United States Code, Title 18, Section 88
"United States Code, Title 50, App. Section 901 et seq.
"Conspiracy to commit offenses against the United States.
"Violations of the Emergency Price Control Act of 1942.
"In the District Court of the Southern District of California, ss.:
"The Grand Jurors of the United States of America, being duly impanelled, sworn

[1]. 18 U.S.C.A. § 88 [now § 371], (See Note 4.)

and charged in the District Court for the Southern District of California, Central Division, *in the September, 1945, Term of this Court, having begun but not finished during the said September Term of Court, among other things the matter of the investigations charged in this indictment, and having continued to sit by the order of this Court in and for the said District during the February, 1945 term to complete inquiries begun, but not finished, at the original term, and inquiring for that District,* upon their oaths *find and present as follows:"* (The body of Count One follows.)

■ We italicize the caption language emphasized by appellants. It is claimed that this language shows an absence of jurisdiction of the grand jury because the term of the court under which the indictment was brought commenced on the second Monday of September, 1945, consequently this term could not have ended *during February, 1945.*[2]

■ It is clear that the mistake in dates was a typographical error. Such an error is not a fatal defect in an indictment and the overwhelming weight of authority so holds. This doctrine loses none of its force or authority by reason of the rule that Federal courts lack authority to permit amendments of or changes in the charging allegations appearing in the *body* of an indictment. Carney v. United States, 9 Cir., 163 F.2d 784, and cases there cited, certiorari denied 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 400. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 does not hold to the contrary. The cases make clear that the caption is not a controlling factor and that erroneous recitals therein do not vitiate an indictment; furthermore, that a distinction must be drawn between the body (the charging part) and its caption.[3]

The date of February, 1945 appearing in the caption should have been February, 1946. See Note 2. The record wholly fails to indicate that appellants suffered prejudice by reason of this mistake of dates. We agree with appellee that this posture of the case presents a situation coming fairly within the spirit of 18 U.S.C.A. § 556,[3a]

---

2. In the absence of a contention to the contrary we assume that the term of the district court was as asserted by appellants. At trial the prosecution introduced in evidence a certified copy of an order of the court for a continuance of the grand jury, dated January 30, 1946, which directed that the grand jury empaneled for the September, 1945 term of the court continue to sit during the succeeding term of the court beginning on the first Monday of February, 1946, until discharged, for the purpose of completing investigations begun but not finished by said grand jury of violations of the Emergency Price Control Act of 1942—and to take such action by indictment, or otherwise as such investigation will warrant.

Under the circumstances of this case we find no merit in appellants' contentions that the order continuing the grand jury was irrelevant and an attempt to impeach the indictment. It was properly admitted in evidence to prove that the term of service of the grand jury was lawfully extended beyond the term of court in which it was selected to serve. This extension of the term of service sufficiently complied with then applicable statutory provisions. See Section 421 of Title 28 U.S.C.A. [supplanted by Federal Rules of Criminal Procedure, Rule 6(a), (g), 18 U.S.C.A.].

3. Carney v. United States, supra; Brown v. Hudspeth, 10 Cir., 103 F.2d 958; Edgerton v. United States, 9 Cir., 143 F.2d 697; United States v. Fawcett, 3 Cir., 115 F.2d 764, 132 A.L.R. 404; Barnard v. United States, 9 Cir., 16 F.2d 451, certiorari denied 274 U.S. 736, 47 S.Ct. 575, 71 L.Ed. 1316; United States v. Bornemann, 9 Cir., 35 F. 824; United States v. Clark, D.C., 125 F. 92; Lund v. United States, 8 Cir., 19 F.2d 46; Simmons v. United States, 8 Cir., 18 F.2d 85. For cases holding that mere clerical errors in indictments are not fatal, even when in the body thereof, see Lund v. United States, supra, this note; Iponmatsu Ukichi v. United States, 9 Cir., 281 F. 525, certiorari denied 260 U.S. 729, 43 S.Ct. 92, 67 L.Ed. 485; Hogue v. United States, 5 Cir., 192 F. 918; United States v. Fawcett, supra, this note.

3a. Supplanted by Federal Rules of Criminal Procedure, Rule 52(a), 18 U.S.C.A.

pertaining to defects of form in indictments.

■ The leading contention of appellants embraces several issues of the same general character and they are considered together. One of the charges is that the indictment failed to properly inform appellants of the elements of the offense intended to be charged; that in legal effect the trial of appellants on the counts laid in the indictment was a denial of due process of law guaranteed by the Fifth Amendment. In support of this contention appellants make plain that they rely upon the manner in which the Act, and the regulations thereunder are cited in the indictment. The emphasis is upon the fact that each count charges a violation of the *"Emergency Price Control Act of 1942"* and *"*Maximum Price Regulations Nos. 148, 165, 169 and 239 *thereunder."*

The basic argument is that cast in this form, the indictment fails to charge a crime *because:* (1) The "Emergency Price Control Act of 1942," by its terms, expired on June 30, 1943, (2) Maximum Price Regulation No. 169 was promulgated July, 1942 (7 Fed.Reg. 653) under a Congressional mandate which required that the Administrator state the reasons for *any* regulation under the Act, (3) The indictment *omitted* the use of the term "As Amended" when referring to the "Emergency Price Control Act of 1942," (4) The indictment *omitted* the term "Revised" with reference to Regulation No. 169.[4]

Appellants clarify their position in the form of a question. They ask: (May appellants be tried) "upon an indictment setting out as a fact that the prosecution was under an emergency statute, *which by its very terms expired in one year,* [1943], and pursuant to regulations issued *thereunder,* which had no application to the case at bar; and whether such procedure and proceedings are totally void and in violation of due process of law guaranteed by the Fifth Amendment"? (Emphasis supplied.)

This idea is further expressed in the argument that "the prosecution was commenced under a non-existent regulation (169) and a non-existent statute."

■ A further contention is that appellants were "prejudiced" *because* the indictment failed to allege that the Act *became* the "Stabilization Extension Act of 1944", 58 Stat. 632. For reasons stated below this contention is without merit. Reference to the last mentioned statute shows that it carries the caption—"Title I— Amendments to the Emergency Price Control Act of 1942." By this enactment Congress exercised its undoubted power to thus amend and prolong the life of the Act.

These attacks upon the indictment are predicated upon the assumption that the omission of the words "As amended" and "Revised" from the indictment completely nullified the attempt to prosecute for violations of the Act notwithstanding the fact that its effective life, and the regulations thereunder were (as hereafter noted) extended until June 30, 1947, and notwithstanding the fact that all of the substantive offenses charged in the indictment were committed *prior* to June 30, 1946.

That appellants recognize and apparently concede the existence of these provisions of law which extended price controls by extending the effective life of the (1942) Act, is evidenced by their statements that:

"On June 30, 1946, the Emergency Price Control Act, the amendments, [thereto] and the Stabilization Act of 1944 and its amendments and all regulations under *any* of them were *all* terminated"; that *"all* laws and regulations relating to meat had expired on June 30, 1946." (The reference to meat refers to Regulation No. 169.)

The legislative history of the Act reveals that various provisions of law extended its effective life over the entire period covered by all of the charges in the indictment.

At the outset it is to be noted that the citation in 50 U.S.C.A.Appendix, § 946 contains no language indicating a necessity

4. The overt acts charged in the conspiracy count are alleged to have occurred from (the first one) on or about June 30, 1944, to and including on or about March 30, 1945.

to refer to the Act by adding the phrase "As Amended." The Act itself (see § 946) under the caption "Short Title" sets forth that "This Act (§§ 901–922 and 923–946 of this Appendix) may be cited as the 'Emergency Price Control Act of 1942.' Jan. 30, 1942, c. 26, Title III, § 306, 56 Stat. 37."

Appellee concedes, and the legislative changes we note in the margin [5] show that

the Act (of 1942) was, by its terms, to have terminated long prior to the date of the offenses here charged. But, as appellee points out, the section of the original statute, 50 U.S.C.A.Appendix, § 901(b), dealing with extensions of the termination date, was amended from time to time, and it is our view that these various amendments had the effect of extending the ef-

5. Important legislative changes directly dealing with the termination date of the Act appear in the following sequence: When first enacted on January 30, 1942, 56 Stat. 23, the Act contained a provision in Section 1, 50 U.S.C.Appendix, § 901, that the provisions of the Act and all regulations, orders, price schedules, and requirements thereunder should *terminate on* June 30, 1943. (Appellants rely upon this provision to sustain their arguments.)

Section 7(a) of the "Stabilization Act of 1942", October 2, 1942, 56 Stat. 765, 50 U.S.C.Appendix, §§ 961–971, amended this specific termination date in the Act to read "June 30, 1944."

The "Stabilization Act of 1942", 56 Stat. 765, supra, as the same was amended on June 30, 1944 by Title 1 of the "Stabilization Extension Act of 1944" 58 Stat. 632, Public Law 383, retained Section 7(b) of the 1942 Stabilization Act, supra, which section set forth that *"All provisions* (including prohibitions and penalties) of the Emergency Price Control Act of 1942 which are applicable with respect to orders or regulations *under such Act* shall, insofar as they are not inconsistent with the provisions of this Act, be applicable *in the same manner and for the same purposes* with respect to regulations or orders issued by the Price Administrator in the exercise of any functions which may be delegated to him under authority of this Act." The said Stabilization Extension Act of 1944, which carried amendments to the Emergency Price Control Act of 1942 and to the said Stabilization Act of 1942, retained Section 7(c) of the latter Act which provided that "Nothing in this Act shall be construed to invalidate *any provision* of the Emergency Price Control Act of 1942 (except to the extent that such provisions are suspended under authority of section 2), [the 'exception' refers to matters not material to the issues here] *or to invalidate any regulation, price schedule, or order issued or effec-*

*tive under such Act."* (Emphasis supplied.)

Section 101 of the Stabilization Extension Act of 1944, 58 Stat. 632, Public Law 383, 78th Congress, 2nd Session, enacted June 30, 1944, carried a provision extending the said termination date in the Act to June 30, 1945.

Section 1 of Public Law 108, of the 79th Congress, 1st Session, enacted June 30, 1945, 59 Stat. 306, carried a provision extending the said termination date in the Act to June 30, 1946. This Joint Resolution thus extended the effective period and life of the Emergency Price Control Act of 1942, as amended, and the Stabilization Act of 1942, as amended.

[6] By Joint Resolution, Public Law 548, approved July 25, 1946, the said termination date in the Act was extended to June 30, 1947, 60 Stat. 664. This enactment is cited as "Price Control Extension Act of 1946". It permitted administrative decontrol of price regulations; c.f. Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 114, 67 S.Ct. 1129, 91 L.Ed. 1375.

Executive Order 9599, 50 U.S.C.A.Appendix, § 1651 note, issued August 18, 1945, provided generally that the guiding policy of *all* departments and agencies should be (among other matters) "To continue the stabilization of the economy as authorized and directed by the Emergency Price Control Act of 1942, as amended, and the Stabilization Act of 1942, as amended (in 1944), (1) by using all powers conferred therein and all other lawful means to prevent either inflation or deflation; and (2) while so doing, by making whatever modifications in controls over * * * prices * * * are necessary for an orderly transition from war to peace." And further, that "The Price Administrator * * * shall, subject to such directives provided for by law as may be issued by the Economic Stabilization Director, take all necessary steps to assure that the cost of living and the general level of prices shall not rise."

fective life of the Act over the entire period covered by the charges in the indictment. (See Note 5.)

The history of extensions of the life of the Act indicates a studied Congressional intent and purpose to extend its life, its provisions, regulations, orders and price schedules, for the entire period covered by these statutory "extensions." There was no lapse in the life of the Act, and from this it follows that it was in force and effect during the entire period material to the issues in this case.[6]

It is not to be doubted that these various extensions of the life of the Emergency Price Control Act also left unimpaired, and carried forward, a continuing authority of the Price Administrator (during all of the period material to the issues in this case), to promulgate within the scope of his statutory authority, such regulations and orders, and amendments thereof, as he deemed necessary and proper in order to carry out the purposes and provisions of the extended Act. We are persuaded that no provision of law requires or justifies a contrary conclusion in the face of these plain statutory provisions which gave continuing vitality to the Act until June 30, 1947. See sections 901(b), 902(a), 902(g) and 921(d) of the Act. See Notes 4 and 6. See Dossett v. Porter, 6 Cir., 161 F.2d 839, 842, certiorari denied Dossett v. Fleming, 332 U.S. 771, 68 S.Ct. 85, 92 L.Ed. 356; Quirk v. United States, 8 Cir., 161 F.2d 138, 142.

As noted above, both appellants were convicted under the same twenty-two counts charging substantive offenses, these being violations of the regulations. An averment in each of these several counts recited that the regulation (or regulations) there cited "had been duly promulgated pursuant to the provisions of said Act." From a reading of the provisions of law above noted which purported to extend the effective life of the Act, we are convinced that their purpose and legal effect was not only to extend the effective life of the Act but also to retain in full force and effect (except such regulations as the Administrator revoked, amended and/or modified during the "extended" period of life of the Act) all of the regulations promulgated by the Administrator during the entire life of the Act, as thus extended.

■ We are convinced that Regulations Nos. 148, 165, 169 and 239 upon which this prosecution rests, were in full force and effect at all times referred to in the indictment (see Notes 4 and 6) and that the prosecution for conspiracy (Count one) was not barred because the indictment was not returned until March 11, 1946. At all times here material the Act contained a savings clause providing: " * * * except that as to offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense." Quirk v. United States, supra.

■ Appellants particularly stress Regulation No. 169, asserting that it was "revoked" by the Administrator on December 10, 1942, "and several new amendments or provisions had been presented."[7] This argument sheds no light on the history of the Regulation and is misleading. Regulation No. 169 was not revoked. It underwent a general *revision* at or about the time here suggested, as a result of which certain sections were revoked and new sections added. These changes carried into Regulation No. 169 the provisions respecting maximum prices on beef and veal which became and were applicable to appellants' operations during all of the times mentioned in the indictment. We reject the argument that the indictment: "alleged a regulation which did not cover the charge on which the defendant was tried and which contain-

6. The instant indictment was filed on March 11, 1946 and the case came on for trial on June 26, 1946.

7. The importance of this regulation lies in the fact that the eleven counts charging sales of meat items at over-ceiling prices under which appellants were convicted were all laid under No. 169.

ed no specific ceiling or base prices on the theory of which the defendants were tried."[8]

On the record of extensions noted above we conclude that as thus amended and extended, the Act was properly cited in the indictment as the "Emergency Price Control Act of 1942," and that references in the various counts of the indictment to substantive offenses, which are alleged to be offenses against the Act, and Regulations thereunder, were legally sufficient allegations.

As noted above, one of the contentions is that the indictment and the proceedings violated the due process clause of the Fifth Amendment and violated the Sixth Amendment because it failed to inform the accused of the exact nature and the cause of the accusation. The arguments on this contention merely repeat the substance of former assertions that the statute under which they were prosecuted and the regulations thereunder were non-existent for the reason that the statute had terminated and the regulations had been revoked. They are void of merit.

At the outset of this case defendants made a demand for a bill of particulars. Such an application is addressed to the sound discretion of the court and on the record in this case the denial of the demand wholly fails to reveal an abuse of discretion. The various counts of the indictment set out the approximate place and date of the alleged violations, the names of

purchasers, the type of meat sold, invoice number under which sales were made, the maximum price for which meat could have been lawfully sold and the Act and Regulations which established such prices. Pleading more would have pleaded evidentiary facts, and we hold that the indictment was sufficiently definite to inform appellants of the specific charges laid against them and that the bill of particulars was properly denied. Rubio v. United States, 9 Cir., 22 F. 2d 766, certiorari denied 276 U.S. 619, 48 S.Ct. 213, 72 L.Ed. 734; Robinson v. United States, 9 Cir., 33 F.2d 238; Kempe v. United States Note 8, supra; Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, 851, affirmed 336 U.S. 613, 69 S.Ct. 766; Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Rose v. United States, 9 Cir., 149 F.2d 755.

Appellants assail the evidence as being insufficient to support the verdicts but they frankly indicate that much of the force of this contention rests on their arguments which we have noted above. They have "adopted" these contentions as argument on this point. They also assert that there "is absolutely no proof of conspiracy on the part of appellants," or any unlawful agreement between them to violate the Act or Regulations in the respects alleged in Count One.

These contentions are not supported by the record. The existence of a conspiracy may be inferred from circumstantial evidence,[9] and the proven circum-

8. At the trial the prosecution introduced the testimony of a price specialist from the Office of Price Administration. He qualified as a price expert in connection with the Act and the Regulations under it. All of the invoices and statements introduced in evidence in this case were shown to this witness and he was asked to state the ceiling price for the items listed on these invoices whereupon counsel for appellants asked if the witness would testify that each of these prices was the maximum ceiling price applicable on dates mentioned in all of the invoices. When advised that this witness would state them to be the maximum ceiling prices, counsel for appellants stated that he would so stipulate and thereby shorten this line of testimony.

In his instructions to the jury the trial judge advised the jury that the maximum ceiling prices were those agreed upon in this stipulation. Appellants were charged with knowledge of the maximum price fixed by Regulation No. 169. Flannagan v. United States, 9 Cir., 145 F.2d 740, 741; Kempe v. United States, 8 Cir., 151 F.2d 680, certiorari denied, 331 U.S. 843, 67 S.Ct. 1534, 91 L.Ed. 1864; c.f. Uri & Co. v. Bowles, 9 Cir., 152 F.2d 713.

9. Blumenthal et al. v. United States, 9 Cir., 158 F.2d 883, affirmed 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154; Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, 852, affirmed 336 U.S. 613, 69 S.Ct. 766; Quirk v. United States, 8 Cir., 161 F.2d 138; Marino v. United

stances in this case pointed unerringly and conclusively to the existence of the conspiracy charged in Count One. There was evidence that both appellants made illegal (overceiling price) sales of meat; that when such sales were made appellants were engaged in a series of activities directly connected with and carried on as a part of their partnership venture under the auspices and cloak of which the sales were conducted; that at least a part of the asserted "overcharges" was invested in this partnership venture. The invoices and false records put in evidence were records of the partnership. Appellants would have us close our eyes to the significance of this sort of evidence. Appellants were the authors of these records and the jury very logically accepted them at their face value since the appellants elected to refrain from testifying in the case. There is an absence of any rational explanation in the evidence which robs this record of its criminal significance and we are convinced that it fully supports the inference that appellants had entered into and were actively carrying out the aims and purposes of the conspiracy charged in Count One.

■ Appellants complain that evidence against them was given by men who purchased meat from them at over-ceiling prices; that these purchasers were themselves violators of the Act which fact robbed their testimony of the character of "substantial evidence." Even if it could be said that these witnesses were "accomplices", this would not aid appellants since the testimony of an accomplice will support a conviction. See Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; Hass v. United States, 9 Cir., 31 F. 2d 13, certiorari denied 279 U.S. 865, 49 S. Ct. 480, 73 L.Ed. 1003; Pine v. United States, 5 Cir., 135 F.2d 353, 355 certiorari denied 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 1079; Catrino v. United States, 9 Cir., 1949, 176 F.2d 884. Furthermore, the trial court instructed the jury in respect to these

witnesses that: "you should subject the testimony of those witnesses to close scrutiny and it should be treated with caution. You must examine it with care to determine whether it is trustworthy." This admonition to the jury was more than sufficient to provide protection for appellants.

■ We do not attempt to summarize the mass of evidence and testimony adduced to sustain the charges of substantive offenses in the 22 counts under which convictions were obtained. It is sufficient to say that a review of this evidence convinces us that it was properly admitted and that it fully sustains the verdict on each count. The jury weighed the evidence and accepted it as true beyond a reasonable doubt, and since it is supported by sufficient evidence, the verdict binds us. Hemphill v. United States, 9 Cir., 120 F.2d 115, certiorari denied 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503; Henderson v. United States, 9 Cir., 143 F.2d 681.

■ Another contention is that the regulations as to the type of records to be kept were too uncertain and indefinite to form the basis of a criminal prosecution; that the regulation fails to specify the kind or character of the records which should be kept.

The Regulation (No. 169, § 1364.407(b), 7 F.R. 10383) provides that the records for each sale shall show, "the date thereof, the name and address of the buyer and seller, the quantity, grade or grades and weight of all beef carcases, beef wholesale cuts, veal carcasses, veal wholesale cuts, processed products or other meat items subject to this revised regulation sold, and the price charged or received therefor." The requirements of this particular regulation are simple and easily understood. They were sufficiently definite to apprise any business man of ordinary intelligence of exactly the kind and character of records he must keep, and that appellants clearly understood these requirements is plainly revealed by our inspection of the exhibits in this

States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975; certiorari denied 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593; Coates v. United States, 9 Cir., 59 F.2d 173, 174.

case. These show that the records kept by appellants complied fully with the requirements of the challenged regulation save and except in one respect only—the testimony revealed that the prices listed therein were *false*.

It is alleged that the court erred in admitting into evidence, over objection, certified photostatic copies of appellants' individual and partnership income tax returns, for the reason that there was no proper foundation shown and for the further reason that such evidence, in effect, compelled appellants to testify against themselves in violation of the Fifth Amendment to the Constitution.

■ Appellants urge that the mere fact that the returns had the blue seal of the Treasury Department did not establish the authenticity of their signatures. This argument has long since been foreclosed. The income tax returns here introduced were properly certified by the governmental custodian. No other proof of authenticity is required.[10]

The income tax return of appellant Segal listed certain income as derived from "Bonuses and Overcharge on Sales." Appellant Stillman more euphemistically referred to this type of income as "Miscellaneous Commissions and Fees on Meat Sales." It is argued that since the Internal Revenue Code, 26 U.S.C.A. § 54, *required* appellants to make these tax returns under oath, the statements therein were "compelled statements" and that their introduction in evidence, as admissions or confessions, was therefore contrary to the self-incrimination clause of the Fifth Amendment.

■ The constitutional prohibition against the use of compelled testimony in a criminal case extends to prevent the compulsory production of a man's *private papers*, Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. It does not, however, prevent introduction of *public records* required by law to be kept in order that the Government may enforce its laws and regulations. Wilson v. United States, 221 U.S. 361, 380, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L. Ed. 1787.

26 U.S.C.A. § 55 makes income tax returns *public records* and subject to such examination and publicity as permitted by rules and regulations promulgated by the President and prescribed by the Commissioner with the approval of the Secretary. The regulations authorize the official use of copies of the returns in litigation in which the United States is interested in the result, providing they are limited in use to the purpose for which they were furnished. (T.D. 4945 § 463D4 (CCH Par. 517)). The cautionary formalities prescribed by the regulations were fully complied with in this case.

■ Appellants contend that if the statute and regulations cited above are construed to permit the introduction of the tax returns in this case, they are unconstitutional. We are aware that this case differs from the Shapiro case, supra, in that here the "public document" (income tax return) is not one required to be kept or executed *by* the Emergency Price Control Act under which this prosecution arose. However, in many cases income tax returns have been used as evidence in prosecution of crimes other than those arising out of income tax violations, without any discussion by the courts regarding the constitutional privilege.[11] Apparently the is-

---

10. Lewis v. United States, 9 Cir., 38 F. 2d 406; Lewy v. United States, 7 Cir., 29 F.2d 462, 62 A.L.R. 388, certiorari denied 279 U.S. 850, 49 S.Ct. 346, 73 L.Ed. 993, noted 151 A.L.R. 1053; Steiner v. United States, 5 Cir., 134 F. 2d 931, certiorari denied 319 U.S. 774, 63 S.Ct. 1439, 87 L.Ed. 1721; and see Greenbaum v. United States, 9 Cir., 80 F.2d 113.

11. Lewy v. United States, 7 Cir., 29 F. 2d 462, 62 A.L.R. 388, certiorari denied 279 U.S. 850, 49 S.Ct. 346, 73 L.Ed. 993 (mail fraud); Gibson v. United States, 9 Cir., 31 F.2d 19, certiorari denied 279 U.S. 866, 49 S.Ct. 481, 73 L. Ed. 1004 (Prohibition Act conspiracy); Lewis v. United States, 9 Cir., 38 F.2d 406 (mail fraud); United States v. Rollnick, 2 Cir., 91 F.2d 911 (mail fraud);

618

sue in the exact form here presented has not been decided by this court. The Fifth Circuit decided the question in favor of the Government in Shushan v. United States, 117 F.2d 110, 133 A.L.R. 1040. Certiorari was denied by the Supreme Court.[12]

We agree with the reasoning of the court in the Shushan case. The income tax returns were voluntarily executed by appellants under oath. They were not made in compliance with a subpoena or court order, nor were they made under threat of prosecution or induced by any form of compulsion save that reflected in the duty of every person to report all forms of taxable income in the manner prescribed in our Internal Revenue Laws.

If appellants believed that certain declarations in their tax returns might incriminate them they could have refrained from making the voluntary tax declarations here in evidence. However, they chose to report the illicit income rather than risk possible prosecution for making false or incomplete returns covering such income. The disclosures upon the tax returns must therefore be deemed to have been voluntarily entered upon a public record.

 Appellants also contend that the court erred in admitting a sworn statement made by Segal to Internal Revenue agents and in permitting the agents to testify concerning their conversations with appellants. The evidence shows that these statements and conversations were purely voluntary and without any element of compulsion. As a safeguard the trial court instructed the jury that the statements made by either defendant could not be used against the other unless made in the presence of the other. We think that the use of this evidence, when followed by the noted instruction, was proper. Gibson and Shubin cases, supra, note 11; United States v. Monjar,

3 Cir., 147 F.2d 916, certiorari denied 325 U.S. 859, 65 S.Ct. 1192, 89 L.Ed. 1979.

 Appellants next contend that certain exhibits consisting of business records of appellants were admitted into evidence without proper foundation to show that the entries thereon were made in the regular course of business, as required by 28 U.S. C.A. § 1732, formerly § 695. The record shows that appellant Stillman had admitted to the witnesses who introduced these exhibits that they were "the books" of the partnership venture. These admissions, in the absence of any contrary evidence, were sufficient to qualify the books as made in the regular course of business if the jury believed the testimony. Its verdict shows that it did.

 Exhibit 39 was the general ledger of the partnership. The record indicates that counsel for the Government agreed that it (except for three pages, Exhibits 39-A, B and C) might be withdrawn. The court thereupon ruled, "It may be withdrawn." Appellants allege that despite this ruling the entire exhibit remained in evidence "and is before this court." It is asserted that this is highly prejudicial error. Although Exhibit 39 is before this court, there is neither showing nor allegation that it was given to the jury. Even assuming that it was presented to the jury, we fail to understand, after careful examination of the exhibit, in what respect this error prejudiced the appellants. It is merely a sort of business ledger and journal executed in the usual form. Appellants merely content themselves with the blunt statement that it was "highly prejudicial," without any showing of how or why it prejudiced their interests. If there be any error in this respect it was harmless in that it did not affect or prejudice substantial rights of appellants. We therefore disregard it;

Steiner v. United States, 5 Cir., 134 F. 2d 931, certiorari denied 319 U.S. 774, 63 S.Ct. 1439, 87 L.Ed. 1721 (mail fraud); c.f. Greenbaum v. United States, 9 Cir., 80 F.2d 113 (mail fraud); Shubin v. United States, 9 Cir., 164 F.2d 377 (OPA conspiracy).

12. (Four cases) Shushan v. United States, Newman v. United States, Miller v. United States, Waguespack v. United States, certiorari denied, see 313 U.S. 574, 61 S.Ct. 1086, 85 L.Ed. 1532, rehearing denied 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564.

Rule 52(a), Rules of Criminal Procedure, 18 U.S.C.A.

Appellants' final contention is that certain instructions were erroneous and that the court erred in failing to give an instruction offered by appellants. Most of the instructions complained of are objected to because they referred to the "Emergency Price Control Act, *as amended*," and to "*Revised* Regulations," whereas the indictment omitted the italicized words. This technical argument has been answered at length above and it does not merit further discussion. Furthermore, the record shows that these instructions were not objected to in the court below, as required by Rule 30, Rules of Criminal Procedure.

The only objection to instructions raised in the trial court concerned an instruction to the effect that even though price controls for meat had expired *prior to termination of the trial,* the jury was to consider the case as though the controls remained in effect. The instruction was proper; 50 U.S.C.A.Appendix, § 901(b), 1 U.S.C.A. §§ 29, 109, 110, c.f. Fleming v. Mohawk Wrecking & Lumber Co., 331 U. S. 111, 119, 67 S.Ct. 1129, 91 L.Ed. 1375.

Appellants proposed an instruction to the effect that the jury was entitled to determine from all the facts and circumstances whether the statements made by appellants to the Internal Revenue Agents were made voluntarily or under compulsion. The only suggestion that these statements were not made voluntarily was raised by innuendoes of counsel; all of the evidence was to the contrary. There was absolutely no evidence from which the jury could legitimately have inferred that the statements were made under compulsion. Assumptions of counsel are not proof of facts. The proposed instruction was properly refused.

We have examined other contentions in appellants' brief and find them without merit. We think that appellants were given a fair trial and were properly convicted on competent evidence of a most convincing and compelling character.

The judgment and sentence as to each appellant is affirmed.