**UNITED STATES of America,**
**Appellee,**

v.

**Mary Lou RUSSANO and Sebastian Della Universita, Appellants.**

**No. 363, Docket 24987.**

United States Court of Appeals
Second Circuit.

Argued May 6, 1958.

Decided July 30, 1958.

Dodd, Cardiello & Blair, New York City (Bella Dodd, New York City, of counsel), for appellant Mary Lou Russano.

James Schenker (Gilbert S. Rosenthal, of counsel), New York City, for appellant Sebastian Della Universita.

Paul W. Williams, U. S. Atty., S. D. of New York, New York City (William S. Lynch, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before WATERMAN and MOORE, Circuit Judges, and GALSTON, District Judge.

WATERMAN, Circuit Judge.

The appellants, Sebastian Della Universita and Mary Lou Russano, were convicted upon an indictment filed August 14, 1957, which charged that "Commencing on or about the 1st day of January, 1951 and continuously thereafter" until the filing of the indictment they had conspired with certain named persons, including Ralph Russano, Michael Botto, Joseph Ambrosini and Robert Guipone, "and with others to the grand jury unknown" to traffic in narcotics in violation of 21 U.S.C.A. §§ 173, 174. Each of the appellants contends that his conviction should be reversed and the indictment dismissed, or in the alternative a new trial granted, because there is insufficient competent evidence to establish guilt, and because of allegedly erroneous rulings made by the trial judge during the trial.

█ Although the Government sought at the trial to establish the existence of a single conspiracy which operated continuously from 1951 to 1957, the evidence which it adduced, if competent and if credited by the jury, tended first to establish certain dealings in narcotics by the appellants and others during the year 1952, and then, after a lapse, during the years 1955 and 1956. We turn first to the evidence adduced against the appellants during the later years, bearing in mind that their participation in the conspiracy which the Government sought to prove can be established only by proof, properly admitted into evidence, of their own words and deeds. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

One Michael Botto, a named co-conspirator, testified that in early 1956 the appellant Universita had unsuccessfully attempted to purchase heroin from him. Botto said he refused to make the sale because Universita had disparaged the quality of some heroin which he had previously purchased from Frank Rich, Botto's partner. Botto suggested to Universita that "if he wanted anything, why don't he go up to see Ralph, that was his partner," and Universita replied "I guess I will have to go up to see him." Botto's reference to "Ralph" was to Ralph Russano who had been Universita's partner during 1952. Unless this testimony, or the testimony which we shall discuss below concerning Universita's activities during 1952, is sufficient to implicate Universita as a conspirator during 1956, any additional testimony concerning his activities during this period was improperly admitted against him because the remainder of the testimony, which related to two events involving Botto, was clearly hearsay, admissible only if his participation in the alleged six and one-half year conspiracy was first established by other evidence. Thus, Botto testified that after he had declined to sell heroin to Universita, Ralph Russano told him that he, Russano, had supplied heroin to Universita on credit. And also there was testimony that on October 18, 1956, by which time Botto had been arrested by federal agents and had agreed to cooperate with them, Botto and a federal narcotics agent, Giorgio, went to the Bronx, in the vicinity of 180th Street and Hughes Avenue, where they met the appellant Mary Lou Russano and one Rocky McKenney, a cousin of Ralph Russano. Both Botto and Giorgio testified that on this occasion they saw Universita talking with McKenney. Both of them also testified that McKenney later told them that Universita at this time had attempted to purchase heroin. Botto testified that McKenney had said that he had refused to make the sale because Universita still owed Ralph Russano $200. Giorgio testified that McKenney said he had refused to make the sale because Universita would not pay enough money.

The evidence adduced by the Government to establish the appellant Mary Lou Russano's participation in the conspiracy during 1956 was only slightly more substantial than the evidence against Universita. Botto testified that on October 18, 1956 he and agent Giorgio had gone to the United States Court House where they met McKenney and the appellant Russano. The appellant was there to see if she could provide bail for her husband, Ralph Russano, who had been arrested on a narcotics charge. Mary Lou asked Botto if he wanted any narcotics. Upon receiving an affirmative answer, she told him to "meet me up in the house tonight and I will have a connection for you." She declined, however, to tell Botto who the connection was. That evening Botto and Giorgio went to the Bronx where they met McKenney and Mary Lou Russano. She then said that they were to meet Universita later that evening. Botto informed Mary Lou that he did not want to purchase any narcotics that evening because "the area was too hot."

Other testimony was introduced against Mary Lou Russano which tended to implicate her in the narcotics traffic during the 1955–56 periods, but, as in the case of Universita, this additional testimony was hearsay and admissible against her only if her participation in the alleged conspiracy was first proved by evidence of her own words and acts. Thus, Botto testified that early in 1955 he had gone to Ralph Russano's apartment to purchase heroin and that Ralph Russano told him that Mary Lou was out getting it. Botto then testified that later that same day, Ralph delivered the heroin and, according to Botto, told him that Mary Lou had brought the hereoin to the apartment.

The foregoing testimony was all that was introduced to establish the appellant's participation in the conspiracy during 1955–56.

There was, however, other evidence introduced by the Government upon which it relies heavily on this appeal, which tends to establish the appellants'

participation in a conspiracy in 1952. Botto testified that during 1952 Ralph Russano, the appellant Mary Lou Russano, and the appellant Universita frequented a bar in Manhattan where Botto was a bartender, and that on one occasion Universita told Botto that he and Ralph Russano were partners in the "dope" business. In addition, Botto testified that during this period either Ralph Russano or Universita told him that their suppliers were Jo Jo Ambrosini and Sonny Guipone. On August 28, 1952 Universita was arrested by a federal narcotics agent and a New York City detective. Heroin was found on his person and additional heroin and heroin cutting equipment was found in his apartment. On November 28, 1952 Ralph Russano was arrested and a quantity of heroin was found in his possession. Three days later, on December 1, 1952 Universita was again arrested and heroin was again found in his apartment. On this occasion Mary Lou Russano was in Universita's apartment, but there is no indication that she also was arrested.

There is not the slightest hint in the record that either of the defendants, or any of the individuals claimed by the Government to have participated in the alleged single conspiracy engaged in any way in the sale or purchase of narcotics during the period between December 1, 1952, when defendant Universita was arrested for the second time, and 1955, when co-conspirator Ralph Russano sold some heroin to co-conspirator Botto. The Government nonetheless contends that there is sufficient evidence to establish the existence of a single conspiracy which lasted throughout the period specified in the indictment. To support this contention it relies upon evidence that many of the individuals who had been active in the narcotics traffic during 1952 were associated together again in 1955–56, and that there was evidence that Ambrosini and Guipone were the sources of supply at both times. It argues that "once a conspiracy is proved it must be deemed to con-

tinue until the contrary is established." United States v. Perlstein, 3 Cir., 1942, 126 F.2d 789, 798, certiorari denied 1942, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752.

■■ The defendants maintain that no continuing conspiracy was proved, that a variance existed between the indictment and the proof. The Government does not deny that if the evidence failed to establish a single conspiracy, but established the existence of two conspiracies, one in 1952 and another in 1955–56, the appellants were prejudiced thereby. Nor could it be otherwise. If appellants had been tried only for the 1952 conspiracy, the admission of evidence relating to the later conspiracy of 1955–56 would have constituted prejudicial error. Similarly, if they had been tried for the later conspiracy, evidence of earlier illegal acts would have been seriously prejudicial. Whether or not a variance is prejudicial is a judgment that must be made on the facts of each case. Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L. Ed. 1557; Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. Cf. United States v. Postma, 2 Cir., 1957, 242 F.2d 488, where we held that proof that a conspiracy, which was alleged to have existed from 1951 until 1955, commenced in 1952, was not a prejudicial variance.

■ We assume, without so deciding, that the properly admitted evidence adduced at the trial was sufficient to establish that both defendants were members of a conspiracy to traffic in narcotics during 1952, and so conspired together again in 1955–56. Even so assuming, we think it is fairly clear that on the evidence in the record these conspiracies must be considered separate ventures. By December 1, 1952 both Universita and Ralph Russano, who were alleged by the Government to have been the middlemen in the 1952 conspiracy had been arrested on charges of having violated the narcotics laws. The record does not indicate that these arrests resulted in imprisonment, but the most reasonable inference to be drawn from the evidence is that neither of them was engaged in the narcotics business during 1953 and 1954. Thus, Botto testified that in 1955 Ralph Russano told him that "he was back in business again," thereby clearly indicating that for a while he had been out of business. Universita's later unsuccessful attempts in 1956 to purchase heroin from Botto also indicated that the 1952 conspirators were not all doing business with each other in 1956 and that the 1952 conspiracy had terminated.

If there were any evidence concerning the years 1953 and 1954, it might be possible to sustain the appellants' convictions on the theory that a single conspiracy existed throughout the six and one-half year period specified in the indictment, even though with a fluctuating membership. As the record stands, however, viewing the case most favorably for the Government, the evidence tends only to indicate the existence of one conspiracy to deal in narcotics during 1952 and another to so deal in 1955–56.

The Government relies on United States v. Perlstein, supra, and other cases [1] as support for the proposition that the 1952 conspiracy must be deemed to have continued in the absence of evidence to the contrary. They are, however, clearly inapposite for this purpose. In each of them the evidence clearly established a continuous activity on behalf

1. United States v. Valenti, 2 Cir., 1943, 134 F.2d 362, certiorari denied 1943, 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712, rehearing denied 1943, 320 U.S. 809, 64 S.Ct. 29, 88 L.Ed. 489; United States v. Cohen, 3 Cir., 1952, 197 F.2d 26; Hyde v. United States, 1912, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114; Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, certiorari denied 1957, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597, rehearing denied 1957, 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 725; United States v. Graham, 2 Cir., 1939, 102 F.2d 436, certiorari denied, 1939, 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524; Marino v. United States, 9 Cir., 1937, 91 F.2d 691, 113 A.L.R. 975, certiorari denied sub nom. Gullo v. United States, 1938, 302 U.S. 764, 58 S. Ct. 410, 82 L.Ed. 593.

of the conspiracy by alleged members of it; and no lengthy lapse of time after arrests of principal members thereof during which lapse there was no evidence of any activity whatever. On their facts, these cases stand for nothing more than that an individual who has joined a continuing conspiracy will be deemed to have continued his participation in that conspiracy until some affirmative act of withdrawal by him occurs.

In the present case there is not only an absence of evidence indicating a continuing conspiracy, but also an absence of evidence indicating that these two appellants were members of any conspiracy that was in existence during 1953 and 1954. The evidence that does appear in the record tends to indicate that two of the alleged co-conspirators in the alleged 1952 conspiracy, including the defendant Universita, were out of the narcotics business for at least the two years 1953–1954. Under these circumstances, we believe that a prejudicial variance exists between the proof and the indictment.

The only remaining problem is the disposition which we should make of this case. 28 U.S.C. § 2106 provides that:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

In Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335, rehearing denied, 1950, 338 U.S. 957, 70 S.Ct. 491, 94 L.Ed. 590, the Supreme Court held that this provision empowered the courts of appeals to direct a new trial rather than an acquittal when a conviction was reversed on appeal for insufficiency of the evidence. The Court also held that a new trial after a successful appeal would not violate the double jeopardy provision of the Constitution and, although one of the cases relied on by the Court has recently been overruled, Trono v. United States, 1905, 199 U.S. U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292, overruled by Green v. United States, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, the holding of the Bryan case has recently been applied by the Court. Yates v. United States, 1957, 354 U.S. 298, 327–334, 77 S.Ct. 1064, 1 L.Ed.2d 1356. Thus we have broad authority to "require such further proceedings to be had as may be just under the circumstances," including directions on the one hand that the district court dismiss the indictment, and on the other that it retry appellants on this indictment.

We think a new trial is the just mode of disposition on the facts of this case. The Government's proof was sufficient to justify a jury in convicting appellants of conspiring to traffic in narcotics either during 1952 or during 1955–1956. Under the circumstances, a dismissal of the indictment would not be in the interests of justice. See Yates v. United States, 1957, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356; Gikas v. United States, 1 Cir., 1957, 250 F.2d 858, 860; United States v. Kuzma, 3 Cir., 1957, 249 F.2d 619; Lee v. United States, 9 Cir., 1957, 245 F.2d 322, 326; Thomas v. United States, 10 Cir., 1956, 239 F.2d 7, 10. Cf. Sapir v. United States, 1955, 348 U.S. 373; United States v. Silverman, 2 Cir., 1957, 248 F.2d 671, 686–687, certiorari denied 355 U.S. 942, 78 S.Ct. 427, 2 L.Ed.2d 422; United States v. Kram, 3 Cir., 1957, 247 F.2d 830. On a new trial the Government, unless it can adduce evidence connecting the two conspiracies and proving that they were in fact part of one continuing conspiracy, will of course be limited to proving one or the other of the conspiracies—that of 1952 or that of 1955–1956.

Reversed and remanded for a new trial.