**UNITED STATES of America, Appellee,**

v.

**Joseph Louis BURNETT, Appellant.**

**No. 75–1460.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1976.

Decided Feb. 18, 1976.

would be delivered by Deborah Barnett, Kirk's agent, to Cranage at the latter's home, who would pay Barnett for the same. Cranage, in turn, would use Burnett to distribute the drugs. The latter had distributors, one of whom accompanied Burnett on each occasion when he obtained the drugs from Cranage, and this distributor would test the drug by injection. The arrangement continued from September, 1974, into the second week of February, 1975, during which some ten transactions were had but only three were produced in evidence. On each of these the above pattern was followed; the men accompanying Burnett at the time of his first purchase was his distributor in Carbondale, Ill., while on the third purchase a check on the D & J Vending Co. of Alton, Ill. for $200 was given in partial payment for the drugs. Soon after the last sale Cranage was arrested and subsequently agreed to cooperate with the Government.[1]

On February 7, 1975, at the specific request of Government agents, Cranage telephoned Burnett and after a few pleasantries, asked him about a balance of $200 Burnett owed on some drugs; the latter readily acknowledged the debt. Thereafter Cranage asked Burnett if he could "turn a button deal." Burnett responded: "Well, I can turn it here. I've got a guy who really knows what to do, now." Cranage then asked Burnett to call him at another telephone number later in the day. Burnett did this, and arrangements were made for the purchase of Burnett's heroin "operation." The second count of the indictment is based on this telephone call.

2. Burnett raises eight points of error: (1) the district court, on motion of the Government, struck overt act No. 11 of Count I of the indictment, which deprived Burnett of his fifth amendment right to a trial upon the indictment of a grand jury; (2) the evidence was at variance with the bill of particulars filed by the Government;

Donald R. Cooley, Smith, Smith & Cooley, Springfield, Mo., for appellant.

Richard D. Billeaud, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before CLARK, Associate Justice, Retired,* and BRIGHT and HENLEY, Circuit Judges.

PER CURIAM:

Joseph Louis Burnett stands convicted by a jury of conspiring to violate the narcotics laws, 21 U.S.C. § 846 (Count I); and using a telephone to facilitate a narcotics conspiracy in violation of 21 U.S.C. § 843(b) (Count II). He was sentenced to 10 years imprisonment on Count I and four years on Count II to be served concurrently.

1. The gist of the conspiracy was that Joseph Cranage would secure heroin from his principal supplier, Eugene Kirk; it

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

1. Cranage pled guilty to three counts of an Information and was sentenced to an evaluation study, 18 U.S.C. § 4208(b), and was awaiting resentence on the remaining counts.

(3) the evidence as to Count I was insufficient, merely proving a buyer-seller relationship, rather than a conspiracy; (4) entrapment; (5) the refusal of the court to give three tendered jury instructions of the defense; (6) a fatal variance between the proof and the charges in Count II of the indictment; (7) the presence in the grand jury during its deliberation of "strike force" attorneys; and (8) the introduction during cross-examination of a defense witness of the fact that Burnett was in the penitentiary in 1968.

3. We shall discuss seriatim those points which we have found to have merit:

■ (a) Eleven overt acts were included in Count I of the indictment as returned by the grand jury. Overt act number 11 stated: "On or about February 7, 1975, Joseph P. Cranage and Joseph Louis Burnett, the defendant herein, spoke on the telephone." This was, indeed, the same telephone conversation covered by Count II of the indictment. The general rule is that an indictment may not be amended, *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); however, the court may amend by striking out anything "merely a matter of form," *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), or where it is surplusage and nothing is thereby added to the indictment, and the remaining allegations state an offense, *Salinger v. United States*, 272 U.S. 542, 548–549, 47 S.Ct. 173, 71 L.Ed. 398 (1926), especially where the elimination limits the charge of the indictment, rather than broadening it, *Mellor v. United States*, 160 F.2d 757, 762, 763 (8th Cir. 1947). Furthermore, a finding of prejudice to the defendant must be present before an amendment is held impermissible. *United States v. Spector*, 326 F.2d 345, 347–348 (7th Cir. 1963); *Stillman v. United States*, 177 F.2d 607 (9th Cir. 1949). We rather think that the striking of one out of eleven overt acts was merely a clearing out of "surplusage" and was trivial, of useless value, and innocuous effect. This is especially true in a case where no overt acts are required (21 U.S.C. § 846), no prejudice was suffered, the one overt act withdrawn was not an essential element of the crime charged in Count I, and added nothing to the same.

■ (b) Count II of the indictment gives us more pause. We are disturbed about the entrapment techniques utilized by the Government, and the fact that Cranage was in the custody or control of the Government when he put in the telephone call to Burnett. Moreover, both Kirk and Ms. Barnett had been arrested. Hence the conspiracy had ended, says Burnett. However, we have concluded that the conspiracy had not ended. Indeed, the record shows that Burnett had continued to distribute heroin; he knew of Kirk and Barnett and their role in the conspiracy, and they still remained at large and might well be continuing their wholesaling of drugs. The test is not the arrest of some of the conspirators, but whether the remainder of the conspirators were able to continue with the conspiracy. *United States v. Russano*, 257 F.2d 712, 715 (2d Cir. 1958); *United States v. DeSapio*, 435 F.2d 272 (2d Cir. 1970), *cert. denied*, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971).

■ As to the entrapment, we note that Burnett voluntarily initiated the last telephone call to Cranage. We do not believe under the facts here that the conduct of the Government was "so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431–432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). While *Hampton v. United States*, 507 F.2d 832 (8th Cir. 1974) is now before the Supreme Court, we do not believe that even though the Court reversed *Hampton,* it would control the disposition here. The conduct of the agents here was but to gain evidence of Burnett's continued illegal activity, an appropriate motive, and the telephone call involved in the charge was placed by Burnett, not Cranage.

■ (c) Nor do we find the existence of two conspiracies here. The nature of the agreement was that each of the parties

would perform a different function, and the agreement among them to so act constituted a single conspiracy. *United States v. Varelli*, 407 F.2d 735, 742 (7th Cir. 1969), *United States v. Hutul*, 416 F.2d 607 (7th Cir. 1969), *cert. denied*, 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970). The record here shows that each party knew exactly the role of the other. Cranage had advised Kirk that Burnett was his partner and owed him money. Burnett had met with each of the participants (save Kirk) at Cranage's home. Indeed, he met Ms. Barnett there, saw her in the act of cutting the heroin and patted her on the hip, much to her disgust. We, therefore, find a closer knit group here than in *Blumenthal v. United States*, 332 U.S. 539, 556–558, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947) where the Court held:

> * * * the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of all its details or of the participation of others.

We, therefore, conclude that the proof developed a single conspiracy to distribute heroin as charged in Count I.

■ (d) We have studied the record as to the reprehensible testimony of the defense witness Castaldi. We find that when the prosecutor, on cross-examination, asked Castaldi if he had seen Burnett during the year " '68," Castaldi's answer was not only unexpected but was entirely spontaneous. While the prior insistence of Burnett's counsel that the court admonish the prosecutor not to pursue the inquiry indicates that defense counsel may have arranged the answer, we need not and do not so find. In fact the prosecutor indicated that defense counsel was equally surprised at the answer of Castaldi. One never is able to predict what a prisoner will say on the witness stand, especially a three-times convicted one. Prisoners seem to be conjurers of deceit when called to testify, surprising not only the court but practitioners as well. As a consequence, they are seldom used by either party. In any event, using an old-

timer such as Castaldi as a staunch backstop may well have been a signal to the jury that Burnett himself was no virgin. We, therefore, conclude that if there was error, it was harmless.

We have considered the remaining assignments of error and find them to be without merit and not deserving of discussion. The judgment is

Affirmed.

BRIGHT, Circuit Judge, concurring.

I entertain a good deal of doubt that Count II should not be reversed, either on the basis that the conspiracy had ended or that the alleged telephone violation was directly induced by the Government's placing of the questioned telephone call. Nevertheless, I concur. I find it unnecessary to resolve the validity of Count II, relying on the concurrent sentence doctrine.