**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Buck WILLIAMS, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles J. McNEAL, Defendant–Appellant.**

Nos. 91–5167, 91–5427.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1992.

Decided Oct. 7, 1992.

As Amended Nov. 3, 1992.

Nelson Rufus Bickley, Jr., Charleston, W.Va., argued for defendant-appellant McNeal.

Thomas W. Smith, Thomas W. Smith Law Offices, Charleston, W.Va., argued, for defendant-appellant Williams.

John Kirk Brandfass, Asst. U.S. Atty., Charleston, W.Va., argued (Thomas W. Carey, U.S. Atty., on the brief), for plaintiff-appellee.

Before SPROUSE and LUTTIG, Circuit Judges, and LEGG, United States District Judge for the District of Maryland, sitting by designation.

## OPINION

LEGG, District Judge:

Buck Williams and Charles McNeal appeal their respective convictions and sentences for distribution of and possession with intent to distribute, and conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a) and 846 (1988). Appel-

lants present two issues: (i) whether the district court erroneously denied appellants' motions to suppress the fruits of an allegedly improper search warrant; and (ii) whether the district court erroneously attributed 67 grams of cocaine base to appellants as "relevant conduct" in determining their guideline sentencing range. Additionally, Williams contends that the district court's refusal to compel the government to disclose prior to trial the quantity of cocaine it intended to attribute to him in the event he was convicted and sentenced denied him effective assistance of counsel and due process of law. We conclude that the district court did not err in any of the above concerns and accordingly affirm the judgment of the district court.

## I. *Facts*

At approximately 7:05 p.m. on January 29, 1991, Williams and McNeal were arrested in, or just outside of, an apartment in the Orchard Manor public housing project in Charleston, West Virginia. Participating in the arrest were approximately twelve members of the Charleston Metropolitan Drug Enforcement Task Force ("MDENT") and Agent Stan Kennedy, a federal officer who had accompanied the MDENT officers as part of his training. Immediately prior to their arrest, McNeal and Williams sold crack cocaine to an MDENT informant and part-time dealer named William Sayles.

Because the apartment's leaseholder was not present at the time that McNeal and Williams were arrested, the officers waited to search the apartment until Detective Steve Neddo obtained a search warrant from a Kanawha County Magistrate. Based upon information provided by Sayles, the warrant was issued to Detective Neddo at approximately 8:20 p.m. that evening. Shortly thereafter, Neddo radioed the officers waiting at the apartment and told them that he had received the war-

rant.[1] The officers then searched the apartment and found cocaine on a table in the living room and cocaine base in the refrigerator.

Prior to Detective Neddo's arrival at the apartment, Williams and McNeal were taken to the Charleston Police Department Patrol Division Office ("PDO"), where they underwent standard processing. After the cocaine base was discovered, one of the arresting officers, Detective Mick, also returned to the PDO. Upon arrival, Mick telephoned Assistant United States Attorney ("AUSA") J. Kirk Brandfass to ask whether the United States would be prosecuting the case. Detective Mick briefly informed the AUSA that two out-of-state defendants had been arrested for selling cocaine base and that an additional quantity of the drug had been found in the Orchard Manor apartment. Upon hearing these facts, AUSA Brandfass replied that the United States would prosecute.

The government asserts that Detective Mick telephoned the AUSA before the appellants were booked federally; appellants, however, maintain that the call was made afterward. The booking ticket reflects that appellants were booked at 8:42 p.m. as federal prisoners.[2]

Williams and McNeal were initially tried together. On May 13, 1991, the district court, after hearing testimony from six law enforcement officers and informant Sayles, denied appellants' pretrial motion to suppress the fruits of the search. Appellants contended that the search warrant was invalid under Fed.R.Crim.P. 41(a) because it had been issued by a county magistrate, rather than a federal magistrate or a state court of record. Under appellants' argument, the police intended to have them prosecuted federally from the beginning, and the county magistrate was not a proper source for a federal warrant. The court rejected appellants' contention, finding

---

**1.** The parties dispute whether the officers began to search the apartment immediately after hearing from Neddo, or whether they waited until Neddo arrived at the apartment with the warrant ten minutes later.

**2.** The record reflects that before speaking with AUSA Brandfass Detective Mick had used state booking procedures, and that the writing on the booking ticket listed only the applicable state statute until after Mick learned that the case would be handled federally.

that: (i) the decision to proceed federally was made after the search warrant was obtained and executed, (ii) there was no violation of Fed.R.Crim.P. 41(a), and (iii) historically, not all MDENT cocaine base cases were prosecuted federally; twenty-six such cases had been prosecuted by the state authorities.

Later, McNeal retained new counsel and received a severance. Williams' trial began on May 14, 1991 and Williams was found guilty on both counts. Before McNeal's trial began, McNeal again sought suppression of the search results under Rule 41(a). The district court denied McNeal's motion to suppress after hearing testimony from four officers.[3] McNeal was subsequently found guilty on both counts of his indictment.

On August 23, 1991, the first portion of a contested sentencing proceeding was held for the purpose of determining the amount of cocaine base attributable to each appellant as relevant conduct. Detective Mick testified that he had interviewed Sayles, who claimed to have seen a golf-ball sized piece of cocaine in appellants' possession on January 28, 1991, the day preceding appellants' arrest. Sayles also testified that he saw the cocaine on January 28. Dr. Robert Myers, a chemistry professor at West Virginia Tech., testified that the weight of a similarly-sized piece of cocaine base would be approximately 67.5 grams.[4]

The second and final sentencing hearing was held on September 19, 1991. The court found that: (i) appellants were in possession of a golf-ball sized piece of cocaine base on January 28, 1991, (ii) the weight of the cocaine base was 67 grams, and (iii) appellants possessed the cocaine base as part of a common drug distribution scheme that also included the offenses of conviction. The court then raised appellants' guideline ranges from 30–37 months to 135–168 months.

## II. Standard of Review

■ We review legal conclusions arrived at by the district court on a *de novo* basis, but we review the factual findings underlying legal conclusions under the clearly erroneous standard. *See United States v. Ramapuram,* 632 F.2d 1149, 1155 (4th Cir. 1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981). Determinations regarding the quantity of cocaine base to be considered as relevant conduct for purposes of calculating a base offense level are factual in nature and subject to the clearly erroneous standard of review. *United States v. Hicks,* 948 F.2d 877, 881 (4th Cir.1991); *see also United States v. White,* 875 F.2d 427, 431 (4th Cir.1989).

## III. Fed.R.Crim.P. 41(a)

■ Appellants argue that the underlying search warrant violated Fed. R.Crim.P. 41(a), which requires that a federal search warrant be issued by a federal magistrate or a state court of record.[5] Appellants contend that the search warrant obtained by Detective Neddo was invalid because the MDENT officers had initially intended to prosecute appellants federally

---

**3.** During the hearing, the court found that: (i) the state search warrant was obtained at approximately 8:20 p.m. (subsequent to the arrest of Williams and McNeal), (ii) after being radioed by Detective Neddo, the officers in the apartment did not await his arrival, but immediately began to search the apartment, (iii) Detective Mick arrived at the PDO at approximately 8:30 p.m., and telephoned AUSA Brandfass shortly thereafter to learn if the case would be handled federally, (iv) the United States Marshals were then informed that the case was federal and transported appellants from the PDO to the Kanawha County Jail, booking them as federal prisoners at approximately 8:42 p.m.

**4.** Detective Mick had asked Sayles to recreate a model of the cocaine mass out of Play–Doh

brand clay. Mick then sent the model to Dr. Myers.

**5.** Fed.R.Crim.P. 41(a) provides:

Upon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate, or a state court of record within the federal district, for a search of property or for a person within the district and (2) by a federal magistrate for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed.

and the county magistrate was an improper source for a federal warrant. The government replies that its decision to prosecute federally was not made until the warrant had issued and the search had been completed.

In a recent case, we decided that the test to be applied in determining whether a warrant must be obtained in compliance with Rule 41(a) is whether the warrant application was made "at the direction or urging of a federal officer." *United States v. Smith,* 914 F.2d 565, 569 (4th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 999, 112 L.Ed.2d 1082, (1991). *See also United States v. MacConnell,* 868 F.2d 281 (8th Cir.1989) (significant prior involvement by federal officers required before search characterized as federal); *accord United States v. Bookout,* 810 F.2d 965, 967 (10th Cir.1987). The record here reveals no evidence suggesting that the warrant obtained by Detective Neddo was issued in response to a directive or urging from Agent Kennedy, the only federal agent who accompanied the MDENT officers during their arrest of appellants and search of the apartment.[6] Nor has there been any showing that the MDENT officers initially intended to prosecute the case federally. Accordingly, we affirm the district court's finding that the officers were not required to comply with Rule 41(a) in obtaining the warrant.

## IV. *Relevant Conduct*

■ A defendant's possession or distribution of types and quantities of drugs not specified in the count of conviction is to be considered for sentencing purposes to determine a base offense level if it is part of the same course of conduct, common scheme, or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(2); *see also United States v. Cusack,* 901 F.2d 29, 32–33 (4th Cir.1990). The government must establish such conduct by a preponderance of the evidence. The district court's determination that other acts of drug distribution are part of the same course of conduct as

the offense of conviction is a factual determination subject to review by this court under the clearly erroneous standard. *See United States v. Williams,* 880 F.2d 804, 806 (4th Cir.1989).

■ In evaluating "same course of conduct" issues, the sentencing court should consider "such factors as the nature of the defendant's act[s], his role, and the number and frequency of repetitions of those acts, in determining whether they indicate a behavior pattern." *United States v. Santiago,* 906 F.2d 867, 872 (2d Cir.1990). At appellants' sentencing, the government presented evidence that approximately 67 grams of cocaine base should be attributed to McNeal and Williams based upon the testimony of Sayles and Dr. Myers. After hearing this testimony, the court found that the weight of the cocaine base was 67 grams and that appellants possessed it with intent to distribute on January 28 and 29, 1991. The court then determined that the total offense level for each defendant was 32 and that both defendants had a criminal history category of II. The court found that the applicable guideline range was 135 to 168 months; both men received sentences of 135 months.

Appellants contend that Sayles' testimony was not credible because it contained inconsistencies and because another witness discredited his reputation for veracity. After considering Sayles' testimony, however, the district court determined that he was a believable witness, and, as noted above, we review the district court's findings as to relevant conduct with due deference to the trial court's opportunity to assess credibility. Because we find that the trial court's determinations are supported by the record, we find no error in the sentences received by appellants.

## V. *Disclosure of Cocaine Base Quantities*

■ Finally, appellant Williams argues that he was deprived of effective assistance of counsel when the court denied his pretrial motion to require the government to

---

**6.** The record demonstrates that Agent Kennedy, a recent graduate of the Drug Enforcement Administration academy, accompanied the MDENT agents only as an observer.

disclose the quantity of cocaine it intended to attribute to him in the event he was convicted and sentenced.[7] Williams argues that, deprived of this information, he and his counsel could not calculate the possible range of sentences upon conviction or meaningfully decide whether to plead guilty or proceed to trial.[8] Williams also claims that the first allusion to the "golf-ball" sized piece of cocaine base occurred during trial, and he implies that he and his counsel had insufficient time to prepare to oppose the admission of, or rebut, this evidence.[9]

The government maintains that Williams was informed of the maximum sentence available for each of the two counts and was not entitled to more information. The case law supports the government's contention. In *United States v. Strickland,* 725 F.Supp. 878 (E.D.N.C.1989), the court held that the advent of the sentencing guidelines does not give defendants an expanded right to receive any sentencing information prior to pleading guilty, other than that required under Fed.R.Crim.P. 11.[10] *Strickland,* 725 F.Supp. at 879, citing *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989).[11] Similarly, in *United States v.*

*DeFusco,* 949 F.2d 114, 119 (4th Cir.1991), we found that Rule 11(c)(1) imposes no requirement that a defendant be informed of the applicable sentencing range under the guidelines before a court can accept a guilty plea. 949 F.2d at 119. Indeed, we found that Rule 11 applied only to *statutory* penalties and not to guideline ranges. 949 F.2d at 118. *See also United States v. Henry,* 893 F.2d 46 (3d Cir.1990). We therefore conclude that a defendant has no right under the guidelines or the federal rules to receive information about guideline ranges prior to trial.

■ The rule in this circuit is that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Percy,* 765 F.2d 1199, 1205 (4th Cir.1985); *United States v. Fisher,* 477 F.2d 300 (4th Cir. 1977). That showing has not been made here, particularly because, as noted *infra,* (i) Williams himself was in the best position to estimate the quantity of drugs attributable to him, and (ii) Williams has provided no legal support for his argument that potential relevant conduct information

---

**7.** The indictment charged Williams with two counts: (i) conspiracy to distribute cocaine base, and (ii) possession with intent to distribute and distribution of cocaine base. The indictment, however, did not allege any specific quantities of cocaine or cocaine base, referring only in Count Two to the sale of a "quantity of cocaine base ... in exchange for One Hundred Twenty Dollars ($120.00)."

**8.** U.S.S.G. § 1B1.8(a), entitled "Use of Certain Information", provides:

Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement, the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

**9.** Williams' second argument regarding trial preparation lacks merit. The record shows that on the day preceding their arrest, appellants displayed the "golf-ball" sized piece of cocaine and sold a portion thereof to Sayles. Moreover, the indictment was based upon information giv-

en by Sayles to the MDENT officers. Thus, appellants had notice that Sayles had seen the piece of cocaine and that he would be a principal witness against them at trial.

In some conspiracy cases, the government seeks to attribute to the defendant quantities of drugs of which the defendant had no direct knowledge. In this case, however, Williams was in a position to advise counsel of the quantities of cocaine that might be attributed to him were he convicted and sentenced.

**10.** Rule 11(c)(1) provides, in relevant part:

Before accepting a plea of guilty ..., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) ... the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.

Fed.R.Crim.P. 11(c)(1).

**11.** Williams does not suggest that counsel failed to inform him that under U.S.S.G. § 1B1.3 his sentencing range would increase as the quantity of drugs attributable to him as relevant conduct increased. U.S.S.G. §§ 1B1.3, 2D1.1(c).

must be disclosed prior to trial under either the sentencing guidelines or Fed.R.Crim.P. 11. We therefore find Williams's argument to be without merit, and affirm the sentence imposed by the district court.

For the reasons set forth above, the court hereby affirms the convictions and sentences of appellants McNeal and Williams.

AFFIRMED.