14 F.3d 597
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Cory Thomas JONES, Defendant-Appellant.
 No. 92-5148.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1993.
Decided Dec. 27, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Kenneth Warren Smith, for appellant.
 Fernando Groene, Asst. U.S. Atty, for Appellee.
 Kenneth E. Melson, U.S. Atty., for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER and PHILLIPS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 
 PHILLIPS
 OPINION
 
 1
 Cory Jones appeals his convictions and sentence on drug-trafficking charges. We find no reversible error and therefore affirm both the convictions and the sentence.
 
 I.
 
 2
 In September 1991, Jones and a co-defendant, Donna Diana, were indicted on charges of conspiring to manufacture, distribute, and possess with intent to distribute 50 grams or more of"crack" cocaine, in violation of 21 U.S.C. Sec. 846, and manufacturing and distributing 50 grams or more of crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). The charges stemmed from an undercover operation conducted by Special Agent Douglas Kahn of the Drug Enforcement Agency ("DEA"), who ordered drugs from Jones through Diana on several occasions between January and September of 1991. The conspiracy was alleged to have begun "on or about January 1991, the exact dates being unknown," and to have continued up through September 1991. The substantive offense was alleged to have occurred"on or about January 25, 1991."
 
 
 3
 Diana pled guilty to the conspiracy charge, pursuant to a plea bargain which required her to testify against Jones. Jones pled not guilty and went to trial, represented by court-appointed counsel, before a jury in the Eastern District of Virginia. Midway through the trial, one of the jurors had to be excused for illness, and the judge declared a mistrial. A second jury trial was held before a different district judge. The jury returned a verdict of guilty on both counts, and the district court sentenced Jones to concurrent terms of 168 months imprisonment on each count. Jones now appeals those convictions and the sentence imposed upon them.
 
 II.
 
 4
 Jones challenges his convictions on a host of grounds. We take first his claim that the district court violated his Fifth Amendment rights when it permitted the government to amend the indictment after the conclusion of the evidence, but before the case was submitted to the jury, to delete the references to a specific quantity of drugs in the charging clauses.
 
 
 5
 The original indictment charged Jones with two offenses. Count I charged him with violating 21 U.S.C. Sec. 846 by conspiring with Diana and persons known and unknown to manufacture, distribute, and possess with intent to distribute "fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as 'crack,' a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." Count II charged him with the substantive offense of violating 21 U.S.C. Sec. 841(a)(1) by manufacturing and distributing"fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as 'crack,' a Schedule II narcotic controlled substance" on or about January 25, 1991. JA 5-10.
 
 
 6
 During the charge conference held at the conclusion of the evidence, the government requested an instruction that it was required to prove only "a detectable amount" of cocaine base or "crack" in order to obtain a conviction. The district court refused to give this instruction, on the ground that it might confuse the jury, since the indictment alleged a conspiracy to distribute a specific amount of drugs. The government then moved to delete the references to a specific quantity of drugs ("50 grams or more") from each of the charging clauses of the indictment. The district court granted this motion, over Jones' objection, finding that the amendment was not substantial and that Jones would not be prejudiced by it. The case was submitted to the jury on a redacted indictment that charged Jones with conspiring to manufacture, distribute, and possess with intent to distribute, and actually manufacturing and distributing, an unspecified amount of "a mixture or substance containing a detectable amount of cocaine base, commonly known as 'crack'." JA 21-24 (amended indictment).
 
 
 7
 Jones now contends that by allowing this last-minute amendment to the indictment, the district court violated his Fifth Amendment right to be charged by a grand jury and to receive adequate notice of the charges against him. We disagree.
 
 
 8
 The general rule is, of course, that the language of an indictment may not be altered or amended except by resubmission to the grand jury. See Ex Parte Bain, 121 U.S. 1, 9-10 (1887). This rule serves two important purposes. First, it gives effect to the defendant's constitutional right to be placed in jeopardy only for offenses charged by a grand jury of his peers, acting independently of either the prosecutor or the judge. Stirone v. United States, 361 U.S. 212, 218-19 (1960). Second, it ensures that the defendant receives adequate notice of the charges against him, so that he can adequately prepare his defense at trial and protect himself against reprosecution for the same offense thereafter. See United States v. Field, 875 F.2d 130, 133 (7th Cir.1989).
 
 
 9
 There are, however, two generally acknowledged exceptions to this rule. See United States v. Winter, 663 F.2d 1120, 1139-40 (1st Cir.1981), cert. denied, 460 U.S. 1011 (1983); United States v. Burnett, 582 F.2d 436, 438 (8th Cir.1976). The first permits the language of an indictment to be altered to correct errors in matters of form, as opposed to substance. See Russell v. United States, 369 U.S. 749, 770 (1962) (dictum).[1] The second permits amendment of an indictment to withdraw from the jury's consideration factual allegations that the evidence does not support, so long as nothing is thereby added to the indictment, the remaining allegations still charge the same offense as the original indictment, and the defendant cannot show that the inclusion of the deleted language in the original indictment somehow prejudiced him in the preparation of his defense. See Salinger v. United States, 272 U.S. 542, 548 (1926); Ford v. United States, 273 U.S. 593, 602 (1927).[2] The two exceptions are closely related, and the cases do not always distinguish between them, although they are in fact analytically distinct: the former permits incorrect statements in the indictment to be replaced with different language, while the latter only permits the deletion of superfluous language.
 
 
 10
 We think the amendment to the indictment in this case was permissible under the second exception to the Bain rule.[3] As indicated, that exception permits the court to amend an indictment to withdraw from the jury's consideration factual allegations that the prosecution's evidence does not support, and to submit the case to the jury on what remains, so long as the change does not add anything to the indictment, the remaining allegations charge the same offense as the original indictment, and the defendant cannot show that the inclusion of the deleted language in the original indictment has somehow prejudiced him in the preparation of his defense (as, for example, by misleading him as to the conduct or transaction that is the basis of the charges against him). See United States v. Prior, 546 F.2d 1254, 1257 (5th Cir.1977); United States v. Burnett, 582 F.2d at 438. See generally 1 Wright, supra, Sec. 127, at 422 & n. 15. Applying this analysis, federal appellate courts regularly have upheld trial court rulings that permit the government to delete from an indictment charging a conspiracy offense superfluous factual allegations that the evidence does not support, such as references to one of several alleged objects of the conspiracy or to one of several overt acts alleged in furtherance of it.[4] On the same theory, the Second Circuit has upheld the deletion from an indictment charging tax evasion of an allegation that defendants owed a specified amount of taxes, where that information was not an essential element of the offense charged, the manner of the attempted evasion was adequately stated even after the deletion, and defendants were not prejudiced in their defense by the inclusion of the omitted language in the original indictment. United States v. Cirami, 510 F.2d 69, 71-73 (2d Cir.), cert. denied, 421 U.S. 964 (1975).
 
 
 11
 We think the amendment at issue here was properly allowed on the same basis. The reference to 50 grams of crack cocaine was not an essential element of either of the offenses charged. The original indictment charged Jones with two offenses: (i) violating 21 U.S.C. Sec. 846, by conspiring with Diana to commit a violation of 21 U.S.C. Sec. 841(a)(1), and (ii) the substantive offense of violating Sec. 841(a)(1). Section 846 makes it illegal to conspire to violateSec. 841(a)(1), and Sec. 841(a)(1) makes it illegal "to manufacture, distribute, or ... possess with intent to ... distribute ... a controlled substance." The actual quantity of drugs involved is not an essential element of the offense proscribed by either section. See United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989) (quantity of drugs involved not essential element of crime of distributing drugs in violation of Sec. 841(a)(1)), cert. denied, 493 U.S. 1084 (1990); United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir.1992) (same); United States v. Campuzano, 905 F.2d 677, 679 (2d Cir.) (quantity of drugs involved not essential element of crime of conspiracy to distribute drugs in violation of Sec. 846), cert. denied, 498 U.S. 947 (1990).[5] Because the precise amount of drugs alleged was not an essential element of either of the offenses charged, the indictment continued to charge the same offense even after its deletion. The reference to a precise quantity of drugs was plainly surplusage, included in the original indictment merely to put the defendant on notice that the enhanced penalty provisions of 21 U.S.C. Sec. 841(b) might be applied against him at sentencing.[6]
 
 
 12
 Nor has Jones shown that the inclusion of the reference to a precise amount of drugs in the original indictment prejudiced him in the preparation of his defense. The original indictment clearly stated the statutes which Jones was accused of violating, and Jones does not claim that it failed to give him sufficient notice of the charges against him, the conduct that formed the basis for those charges, or the penalties to which he might be subject. Instead, he claims that the amendment "impermissibly broadened" the evidence he was called to meet, because the original indictment led him to believe that he could obtain an acquittal simply by showing that the amount of crack involved was less than 50 grams. Br. 12. While Jones' trial counsel may well have believed that to be the case, that belief was incorrect; as noted above, we repeatedly have pointed out that the precise amount of drugs alleged is not an essential element of the offense that the government must prove beyond a reasonable doubt in order to obtain a conviction. Powell, 886 F.2d at 85; Uwaeme, 975 F.2d at 1018 & n. 6.
 
 
 13
 We conclude that the district court did not commit reversible error in allowing the government to amend the indictment, at the conclusion of the evidence, to remove the references to a precise quantity of drugs.
 
 III.
 
 14
 Jones also challenges his convictions on a number of other grounds. We have fully considered each of these arguments and find them to be without merit. We discuss our reasons for so finding briefly below.
 
 A.
 
 15
 Jones contends first that the evidence at trial was insufficient to support his conviction on either the conspiracy count or the substantive offense, because the record is "devoid of any evidence" that he conspired with Diana to sell crack, as opposed to regular cocaine, or that he ever manufactured or distributed crack, as opposed to regular cocaine.
 
 
 16
 We disagree. The evidence at trial, viewed in the light most favorable to the government, was more than sufficient to support the jury's finding that Jones conspired with Diana to manufacture and distribute crack.[7] Though the issue is somewhat closer, we think the evidence at trial, viewed in the light most favorable to the government, was also sufficient to support Jones' conviction for the substantive offense of manufacturing and distributing crack "on or about January 25, 1991." It is true that there was no evidence that Jones himself actually manufactured or distributed crack on January 25, 1991; instead, the evidence showed, at best, that he distributed cocaine in powder form to Diana on that date. But Diana testified that Jones delivered that powder cocaine to her with knowledge that she was going to cook it into crack in order to fulfill a customer's order. JA 175-87. This evidence was sufficient to permit the jury to find Jones guilty of aiding and abetting Diana in committing the substantive offense of distributing crack charged. Since that was the theory upon which the government proceeded here, the verdict on this count must stand as well.
 
 B.
 
 17
 Jones contends next that his conviction must be reversed because his court-appointed trial counsel was constitutionally ineffective, in that he failed to investigate, interview, or subpoena potential alibi and impeachment witnesses suggested by Jones.
 
 
 18
 We decline to address this claim on this appeal. Claims of ineffective assistance of counsel are normally not appropriate for resolution in the first instance on direct appeal, but should be raised instead in a Sec. 2255 proceeding brought in the district court after disposition of the direct appeal. United States v. Williams, 977 F.2d 866, 871 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1342 (1993); United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir.1970). Even when the defendant has already raised his ineffective assistance claim in some fashion before the district court by the time of his direct appeal, we will not consider it unless the record developed below "conclusively shows" ineffective assistance. Williams, 977 F.2d at 871; see Mandello, 426 F.2d at 1023. That is manifestly not the case here: though Jones raised his ineffective assistance claim before the district court, the court did not develop any kind of evidentiary record on it, but instead dismissed it as premature.[8]
 
 C.
 
 19
 Jones next contends that the district court erred in refusing to permit him to play for the jury selected portions of tape-recorded conversations between his co-defendant Diana and DEA agent Kahn, which he says showed that the conspiracy alleged did not exist. The government objected to playing only selected excerpts of the tapes and moved for admission of the complete tapes. The district court admitted into evidence both the selected excerpts prepared by the defense and the complete tapes offered by the government, but refused to permit Jones to play any of these tapes for the jury. The district court did, however, instruct the jury that they would be given a tape recorder and all of the tapes, including the selected excerpts prepared by the defense, and that they could listen to any portion of the tapes they wished in the course of their deliberations. JA 264-65. Jones now contends that the district court's decision to admit all of the tapes and then let the jurors decide which ones to listen to denied him his constitutional rights to compulsory process for the production of evidence in his favor, to cross-examine the witnesses against him, and to a fair trial.
 
 
 20
 We disagree. The district court has broad discretion to decide whether to allow tape recordings to be played for the jury or introduced into evidence. United States v. Valencia, 957 F.2d 1189, 1194 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 254 (1992). The district court held here that all of the tapes were admissible, but that there was no reason to let Jones play them for the jury, since he himself admitted that they did not have any independent probative value, but simply corroborated admissions that Diana had already made on the stand under cross-examination, as to which there was no dispute. JA 233-34. This was not an abuse of discretion. See Valencia, 957 F.2d at 1194-95 (finding no abuse of discretion in district court's decision to admit tape and transcript thereof but not to allow it to be played for jury).
 
 D.
 
 21
 Jones contends next that the district court committed reversible error when it permitted the government to introduce evidence that guns and crack were found in his bedroom at the time of his arrest in September 1991, despite his objection that this evidence was either irrelevant or unduly prejudicial. The district court specifically rejected these arguments and let the evidence in. Jones now argues that this was reversible error because the evidence was of limited probative value, since it involved criminal acts that occurred"eight months after" the crimes charged in the indictment. We disagree.
 
 
 22
 The conspiracy to manufacture and distribute crack charged in the indictment was alleged to have begun "on or about January 1991," but to have "continu[ed] up to the present time." The indictment was handed down on September 7, 1991, and Jones was not arrested until September 18, 1991, at which time the crack and firearms were found in his bedroom. Evidence that at the time of his arrest, Jones was in possession of crack in a high-density form normally associated with dealing rather than personal use, and of firearms, which are known to be tools of the drug-trafficking trade, was plainly relevant to show that the conspiracy was still ongoing at the time of his arrest. The district court did not abuse its discretion in finding that the probative value of this evidence outweighed the risk of unfair prejudice.
 
 E.
 
 23
 Jones also argues that the district court erred in admitting testimony from Diana and Cline that he had sold crack and cocaine to them on several occasions prior to the dates covered by the conspiracy alleged in the indictment. Jones did not object to the admission of this evidence at trial, but now contends that it should have been excluded under Federal Rule of Evidence 404(b) or 403. Because Jones did not make a contemporaneous objection to the district court's admission of this evidence, it is reviewable only for plain error. Fed. R.Crim. Proc. 52(b); United States v. Maxton, 940 F.2d 103, 105 (4th Cir), cert. denied, --- U.S. ----, 112 S.Ct. 398 (1991).
 
 
 24
 We find no error of that magnitude here. We do not think the evidence in question was really evidence of "other crimes" within the meaning of Rule 404(b); instead, it was admissible evidence of acts in furtherance of the conspiracy near enough in time to the general time-frame charged to be probative of the conspiracy's existence, not of "other acts." The indictment alleged that the conspiracy began "on or about January 1991, the exact dates being unknown to the grand jury." JA 5. The evidence in question was of sales made by Jones through Diana in October and December of 1990.
 
 IV.
 
 25
 Jones argues finally that even if his convictions must stand, his sentence should be set aside because the district court erred in assessing the amount of drugs attributable to him for sentencing purposes. The district court calculated Jones' base offense level on the basis of a finding that he was accountable for 50 to 150 grams of crack. Jones contends that the evidence was insufficient to support a finding that he was involved in any conduct involving this much crack. In addition, he contends that the government's decision to amend the indictment to remove the reference to 50 grams of crack somehow "estopped" it from arguing that Jones should be held responsible for 50 or more grams of crack for sentencing purposes. Neither argument has merit.
 
 
 26
 The sentencing guidelines specifically required the district court, in calculating the base offense level for the drug trafficking offenses of which Jones was convicted, to attribute to him all quantities of drugs involved in any conduct that was part of the same course of conduct, common scheme, or plan as the offenses for which he was convicted. U.S.S.G. Sec. 1B1.3(a)(2); see id. at comment (background) ("in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction"); U.S.S.G. Sec. 2D1.1, Application Note 12 ("[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level"). On the basis of these provisions, we have held that a sentencing court properly may take into account quantities of drugs that were not charged or otherwise specified in the indictment, so long as it finds, by a preponderance of the evidence, that the conduct involving the additional amounts occurred and if so, that it was part of the same scheme or course of conduct as the counts of conviction. United States v. Williams, 977 F.2d 866, 870 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1343 (1993); see also United States v. Cousineau, 929 F.2d 64, 67 (2d Cir.1991); United States v. Alston, 895 F.2d 1362, 1371 (11th Cir.1990). The district court's findings on these issues may be reversed on appeal only if clearly erroneous. Williams, 977 F.2d at 870.
 
 
 27
 The evidence before the court at sentencing, including that adduced at trial, viewed in the light most favorable to the government, was more than adequate to support the district court's finding that Jones was involved in the manufacture and distribution of at least 50 grams of crack. Diana testified that she purchased crack from Jones on numerous occasions between October 1990 and his arrest in September 1991. She also testified specifically that he agreed to sell her two ounces of crack (about 56 grams) on January 25, 1991, and that while he did not actually deliver that crack, he did deliver her two ounces of powder cocaine which he knew she was going to cook into an equivalent amount of crack for resale to a third party. The evidence was more than sufficient to support a finding that Jones aided and abetted Diana in manufacturing and distributing more than 50 grams of crack on January 25, 1991. This evidence, viewed in combination and in the light most favorable to the government, was sufficient to establish, by a preponderance of the evidence, that the course of conduct which gave rise to Jones' conviction involved the manufacture and distribution of at least 50 grams of crack cocaine.
 
 
 28
 Nor do we agree with Jones' suggestion that the government's decision to amend the indictment to remove the reference to 50 grams of crack somehow "estopped" it from coming back, following conviction, and arguing that Jones should be held responsible for 50 or more grams of crack for sentencing purposes. The "all relevant conduct" standard of the guidelines clearly contemplates consideration, at sentencing, of conduct that has not been charged and proven beyond a reasonable doubt. See Williams, 977 F.2d at 870.
 
 
 29
 Jones' argument here is essentially that it is unfair to allow government to include a reference to a specific amount of drugs in the indictment in order to preserve the possibility of a mandatory minimum sentence under Sec. 841(b), delete the reference to that amount from the indictment when it becomes apparent that the government may not be able to prove it beyond a reasonable doubt, and then prove, under the more favorable preponderance of evidence standard at sentencing, that the amount originally charged should be attributed to him for sentencing purposes. Whatever surface appeal there may be to the argument, the procedure is specifically contemplated by the Sentencing Guidelines. Jones points to no authority to the contrary in the guidelines themselves, or in other applicable law, and we know of none.
 
 
 30
 We therefore conclude that the district court did not err in calculating Jones' base offense level on the basis of a finding that he was responsible for 50 grams of crack.
 
 V.
 
 31
 For the foregoing reasons, Jones' convictions and sentences are
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 On this basis, courts have upheld amendments to indictments that correct errors in the names of parties and witnesses, the statement of the offense dates, the serial numbers of weapons, and the like. See generally 1 C. Wright, Federal Practice & Procedure: Criminal 2d Sec. 127 (1982 & Supp.1993), at 419-21 (citing cases). 6350 35 5 2 See generally 1 Wright, supra, Sec. 127, at 422 & n. 15 (citing cases)
 
 
 [3]
 In view of that holding, we need not decide whether the amendment at issue here could also be considered to be merely one of form, rather than substance, hence permissible under the first exception to the Bain rule
 
 
 [4]
 See, e.g., Thomas v. United States, 398 F.2d 531, 536-40 (5th Cir.1967) (upholding trial court's decision to permit government to amend indictment, on eve of trial, to delete references to one of the alleged objects of the conspiracy charged and several of the overt acts alleged in furtherance of it, where "the effect of the Court's action was to narrow, not widen, the issues the defendant was called on to meet"); United States v. Burnett, 582 F.2d 436, 438 (8th Cir.1976) (upholding district court's decision to permit government to amend indictment to delete references to one of 11 overt acts alleged in furtherance of drug conspiracy, where the overt act withdrawn was not an essential element of the crime charged and defendant had not suffered any prejudice as a result); United States v. Angiulo, 847 F.2d 956, 963-65 (1st Cir.) (upholding trial court's decision to permit government to amend indictment, midway through trial, to delete references to one of several overt acts alleged in furtherance of a RICO conspiracy, where the change "added no new charges," "the remaining allegations charged the same offenses as the original [indictment]," and the deletion "merely eliminated a superfluous allegation that the evidence did not support"), cert. denied, 488 U.S. 928 (1988)
 
 
 [5]
 Accord United States v. Brown, 887 F.2d 537, 540 (5th Cir.1989); United States v. Jenkins, 866 F.2d 331, 334 (10th Cir.1989); United States v. Wood, 834 F.2d 1382, 1388-90 (3d Cir.1987); United States v. Gibbs, 813 F.2d 596, 599-600 (3d Cir.), cert. denied, 484 U.S. 822 (1987); United States v. Normandeau, 800 F.2d 953, 956 (9th Cir.1986); United States v. McHugh, 769 F.2d 860, 868 (1st Cir.1985)
 
 
 [6]
 The reference in the indictment to 50 grams or more of crack was clearly designed to invoke the provisions of 21 U.S.C. Sec. 841(b)(1)(A)(iii), which requires a mandatory minimum sentence of ten years where 50 grams or more of crack are involved in the offense of conviction
 
 
 [7]
 Diana testified that she had ordered crack from Jones for resale to others on numerous occasions between October 1990 and September 1991. JA 149-58, 188-90, 194-95. Cline corroborated this testimony, testifying that he had purchased crack from Jones through Diana during that period. JA 225-27. Diana testified specifically that Jones had agreed to sell her crack on January 25, 1991, for resale to Kahn. JA 174-76. That Jones did not in fact deliver her the crack as promised is irrelevant, since the gravamen of the offense of conspiracy is the agreement to break the law, not the actual breaking of it. Finally, the government presented evidence that two rocks of extremely high-purity crack were found in Jones' bedroom upon his arrest in September 1991, JA 133-35, and that possession of crack of such high purity is indicative of dealing, rather than personal use. JA 115
 
 
 [8]
 Jones raised his ineffective assistance claim for the first time in a Sec. 2255 motion to vacate sentence filed with the district court shortly after he filed his notice of appeal to this court. The district court declined to address the claim on the merits and instead dismissed the Sec. 2255 motion as premature, applying the rule that a Sec. 2255 motion should normally not be heard while a direct appeal is pending. JA 369. The district court's order specifically stated that this dismissal was without prejudice to Jones' right to refile the Sec. 2255 motion after disposition of his direct appeal. Id. Jones does not contend that the district court erred in dismissing his Sec. 2255 motion as premature