**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 94-5508

DAVID WILLIAMS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                           No. 94-5905
COREY LORENZO WOODFOLK, a/k/a
Big Corey,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                           No. 94-5910
PHILIP EDWARD ROBERSON, a/k/a
Mumin Sahib Abdullah,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5217

DONCARLOS WILLIAMS, a/k/a Dee,
a/k/a Denice,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CR-93-419-JFM)

Submitted: May 21, 1996

Decided: June 17, 1996

Before WIDENER, MURNAGHAN, and WILKINS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

C. Michael Walls, Laurel, Maryland; Marcia G. Shein, LAW OFFICE
OF MARCIA G. SHEIN, P.C., Atlanta, Georgia; Michael E. Kamin-
kow, SCHULMAN, TREEM, KAMINKOW & GILDEN, P.A., Balti-
more, Maryland; Arcangelo M. Tuminelli, Baltimore, Maryland, for
Appellants. Lynne A. Battaglia, United States Attorney, Andrea L.
Smith, Assistant United States Attorney, Susan M. Ringler, Assistant
United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mumin Sahib Abdullah,[1] Corey Lorenzo Woodfolk ("Big Corey"), and Doncarlos Williams ("Dee") all pled guilty to conspiracy to distribute and to possess with intent to distribute heroin. 21 U.S.C.A. § 846 (West Supp. 1996). Abdullah and Woodfolk were each sentenced to serve fifty years and Doncarlos Williams was sentenced to a term of 192 months imprisonment. David Williams took part in the robbery of a K-Mart with the conspirators, pled guilty to conspiracy to interfere with commerce by robbery, 18 U.S.C.A.§ 1951 (West 1984 & Supp. 1996), and received a sentence of 63 months imprisonment.

Woodfolk and David Williams appeal their sentences. Abdullah's attorney has filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), raising a number of issues but stating that in his view there are no meritorious grounds for appeal. Abdullah has filed a pro se supplemental brief. Doncarlos Williams contends that the district court erred in denying his request to enforce a plea agreement which was offered and withdrawn in June 1993 without being accepted by him. For the reasons explained below, we affirm Woodfolk's, Abdullah's, and Doncarlos Williams's convictions and the sentences imposed on David Williams, Abdullah, and Woodfolk.

In 1991 and 1992, Abdullah and Woodfolk sold heroin in Baltimore, Maryland, from a number of stash houses. For a while they were very successful, selling heroin labeled "Strong as Steel," "Python," and "Nice and Smooth." In early 1992, they purchased a barber

_____

[1] Abdullah's name at birth was Philip Edward Roberson, and he was charged in the indictment under this name. Because he legally changed his name to Mumin Sahib Abdullah in 1988, we refer to him by his legal name.

3

shop. Doncarlos Williams worked as a security guard at the shopping center where the barbershop was located and joined their operation. By this time, feeling the need for more cash for drug purchases, Abdullah and Woodfolk carried out a number of robberies with the assistance of Doncarlos Williams and others. In May 1992, the robbery of Arthur Chapple, another drug dealer, was planned at Abdullah's father's house and carried out by Woodfolk, Doncarlos Williams, "Little Corey" Johnson, and Nathaniel Gantt. Williams and Gantt masqueraded as police officers to gain access to the house. The robbers reassembled at Abdullah's father's house afterward and were paid by Abdullah for their participation.

In August 1992, an African drug dealer, Temidayo Sekiteri, was robbed in a similar fashion by Woodfolk, Williams, Gantt, and "Rahim." During the robbery, Woodfolk restrained Sekiteri with either handcuffs or duct tape and stabbed him in the leg repeatedly with a heated knife to get him to reveal the location of his drugs. Although nothing was gained from this robbery, Abdullah again paid the participants afterward.

In February 1993, Abdullah acted as lookout while Woodfolk, Harold Bruton, Timothy Shird ("Bilal"), Doncarlos Williams and his brother, David Williams, robbed a K-Mart store, taking cash, checks, jewelry, and watches. As the robbers entered the store, one employee was escorted back into the store at gunpoint and all the employees were then forced to lie face down on the floor until the robbery was completed while Shird held a gun on them.

Other violent acts were carried out during the conspiracy. In March 1991, Woodfolk and Johnson ordered two subordinates to shoot members of a rival drug gang who were trespassing on their turf. One of the victims, David Jones, died of his wounds. In September 1991, a dry cleaning store near one of the stash houses was burned at Woodfolk's direction after the owner of the cleaners complained to police about drug activity in the area. In December 1992, Woodfolk and Johnson shot and killed Dwayne Oliver and Jack Lewis, two drug dealers who were selling heroin for a former member of the Abdullah/Woodfolk organization. In January 1993, Abudllah, Woodfolk, and Doncarlos Williams attempted an attack on Charles Milton

4

("Butterall"), who had previously worked for the organization, but were scared off when Milton shot through the door of his apartment.

David Williams

David Williams contests the district court's decision to enhance his offense level under USSG § 2B3.1(b)(4)(B), [2] which provides for a 2-level increase "if any person was physically restrained to facilitate the commission of the offense or to facilitate escape." He argues that the enhancement was unjustified because the K-Mart employees were not physically restrained. The district court found that the adjustment was appropriate because one employee was brought back into the store and all the employees were kept on the floor for approximately ten minutes at gunpoint while the loot was gathered. Williams's guideline range with the adjustment was 63-78 months; without the adjustment it would have been 51-63 months. The court found that, even if the adjustment were improper, it would impose the same sentence of 63 months. Therefore, review of the applicability of the adjustment is unnecessary. United States v. White, 875 F.2d 427, 432-33 (4th Cir. 1989).

Corey Woodfolk

Woodfolk and Abdullah entered into identical plea agreements by which they pled guilty to conspiracy and stipulated to a base offense level of 32 (1-3 kilograms of heroin). USSG § 2D1.1 (Nov. 1994).[3] The government agreed to recommend a 3-level downward adjustment for acceptance of responsibility in each case, based on their admission of the drug conduct. The probation officer recommended that both Woodfolk and Abdullah receive a 3-level upward adjustment for having a managerial role in the conspiracy. USSG § 3B1.1(b). Other possible enhancements, adjustments, and departures were left for determination by the district court and were not discussed in their presentence reports.

_____

[2] United States Sentencing Commission, Guidelines Manual (Nov. 1993).

[3] Woodfolk and Abdullah were sentenced in November 1994.

5

In a four-day sentencing hearing, the government produced numerous co-conspirators and other witnesses who testified about the robberies, murders, and arson committed by or at the direction of Woodfolk and Abdullah. Woodfolk produced no evidence to the contrary, but argued that none of the witnesses were reliable. The district court ultimately found that Woodfolk should receive a 2-level enhancement for possession of firearms, USSG § 2D1.1(b)(1), a 2-level adjustment for restraint of a victim in the Sekiteri robbery, USSG § 3A1.3,[4] and a 2-level adjustment for obstruction of justice, USSG § 3C1.1. The last adjustment was based on the beating, at Woodfolk's direction and in his presence, of Givette Hogan, a former stash house worker who testified at the sentencing hearing about the Jones murder and the arson of the dry cleaners. Hogan testified that, in July 1992, after she had been arrested and released, Woodfolk warned her not to give information about him to authorities and then ordered the three people with him to beat her. A year later, when she was actively cooperating with authorities, Woodfolk telephoned Hogan and again warned her that if she talked she might have to pay for her actions.

The district court found that further enhancement of Woodfolk's sentence was unnecessary because he was already at offense level 38 and in criminal history category VI, which gave him a guideline range of 360 months to life. However, the court found that a departure could have been made based on significant physical injury, USSG § 5K2.2, property loss, USSG § 5K2.5, or death, USSG§ 5K2.1. The court imposed a sentence of 600 months.

On appeal, Woodfolk first contests the adjustment for obstruction of justice. The adjustment applies if the defendant willfully attempted to obstruct justice by threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror. USSG § 3C1.1, comment. (n.3(a)). Woodfolk does not contest the fact of the July 1992 beating, but argues that the adjustment for obstruction of justice did not apply because the district court did not find that it was done with a willful intent to obstruct justice, and because there was no

_____

[4] Because the district court described this as an "automatic" increase rather than a departure, we assume the adjustment was applied.

6

ongoing investigation of the heroin conspiracy at the time of the beating, and Hogan was not then a co-defendant or a witness.

We find that the district court did not err as a matter of law in making the enhancement. The evidence produced at sentencing established that Hogan had been arrested in a raid on the stash house where she was working in June 1992 and released on bail. Thus, an investigation and prosecution of the conspiracy was under way. Although the principals had not yet been identified, Hogan was a potential source of information and witness. In July, not long before Hogan began to serve her sentence, Woodfolk warned her not to tell law enforcement authorities what she knew about the organization. The intent to thwart further investigation is clear, as is the nexus to the offense for which Woodfolk was eventually convicted, even though he was ultimately prosecuted by federal authorities.

Woodfolk also contends that use of the preponderance of the evidence standard to resolve sentencing issues violated due process in his case because his sentence was significantly increased by the district court's findings. His argument is without merit. The Supreme Court has held that due process is satisfied by use of the preponderance of the evidence standard to factfinding during sentencing. McMillan v. Pennsylvania, 477 U.S. 79, 91-93 (1986).

Woodfolk next argues that the district court erred in finding that his involvement in the robberies, murders, and arson was relevant conduct because the witnesses were self-interested and unreliable. Certainly, factual evidence relied on by the district court must have some minimal indicia of reliability, United States v. Hicks, 948 F.2d 877, 883 (4th Cir. 1991), but that requirement was satisfied here. Woodfolk points out some inconsistencies in the witnesses' testimony, but overlooks the fact that they corroborated each other far more than they contradicted each other. In a conspiracy, relevant conduct includes all acts committed by the defendant and by others which are in furtherance of the conspiracy, are reasonably foreseeable to the defendant, and are within the scope of the criminal activity the defendant agreed to undertake. USSG § 1B1.3(a). The district court did not err in treating the robberies, murders, and arson as relevant conduct because each was clearly connected to the heroin conspiracy and Woodfolk participated in each of them. The fact that these other

7

crimes were not offenses such as would be grouped under USSG § 3D1.2(d) is of no import. See USSG§ 1B1.3(a)(2).

Finally, Woodfolk argues that the district court's acceptance of his guilty plea before the completion of his presentence report was plain error. Fed. R. Crim. P. 52(b). He claims that his plea was not knowing and voluntary because numerous sentencing issues were unresolved by his plea agreement. However, the parties in this case purposely left those issues to be resolved by the district court during the sentencing hearing. The probation officer was even instructed not to make recommendations to the district court on the additional enhancements sought by the government, and Woodfolk's attorney informed the court at the Rule 11 hearing that, as a result, Woodfolk would not discuss any conduct other than drug activity with the probation officer. The district court made clear that it was not bound by the stipulations in the agreement, thus implicitly deferring acceptance of the agreement. Despite the conflict between Fed. R. Crim. P. 11(e)(2), which permits the court to defer acceptance of the plea agreement until after it has had an opportunity to review the presentence report, and USSG § 6B1.1(c), which states that the court shall wait to accept the plea agreement until after consideration of the presentence report, the district court has the discretion to accept a guilty plea before preparation of the presentence report. See United States v. Ewing, 957 F.2d 115, 119 (4th Cir.), cert. denied, 505 U.S. 1210 (1992).

Moreover, before he entered his plea, Woodfolk was informed of the maximum sentence and of the mandatory minimum sentence to which he was exposed. A defendant need not be informed of the applicable guideline range before the district court accepts his plea. United States v. DeFusco, 949 F.2d 114, 118-19 (4th Cir.), cert. denied, 502 U.S. 885 (1991). No plain error occurred.

In his pro se supplemental brief, Woodfolk maintains that the government breached the plea agreement by arguing for an enhanced sentence based on relevant conduct. He further argues that his guilty plea was invalid because he was not advised that he was waiving his right to a jury trial and that a lower standard of proof applied at sentencing. These arguments are without merit; in particular, the district court informed Woodfolk of the rights he was waiving during a lengthy and complete Rule 11 hearing.

8

<u>Mumin Sahib Abdullah</u>

At his sentencing hearing, Abdullah personally requested leave to withdraw his guilty plea. He said he had been pressured to plead guilty and had since changed his mind and lost confidence in his retained attorney. He said his attorney had wrongly told him that the guidelines applicable to him would change before his sentencing. He said he had been led to believe that his sentence would be considerably shorter than what he now understood he might face, and that evidence of the "Whitelock murders" (of Oliver and Lewis) would not be considered. The district court found that Abdullah had not shown a fair and just reason to withdraw his plea and denied the motion. Abdullah decided not to ask for the appointment of new counsel.

Abdullah's base offense level was 32, increased to 35 by an undisputed 3-level adjustment for his role in the offense, and decreased again by 3 levels for acceptance of responsibility. The district court added a 2-level enhancement for possession of firearms, USSG § 2D1.1(b)(1), and a 2-level adjustment for restraint of victim, USSG § 3A1.3, bringing Abdullah's guideline range to 36. The court found that a 2-level departure could be made for physical injury, USSG § 5K2.2, property loss, USSG § 5K2.5 or possibly death, USSG § 5K2.1. Because Abdullah was in criminal history category VI, his guideline range was clearly 360 months to life. The court sentenced Abdullah to 600 months imprisonment.

Abdullah's attorney has filed a brief in this court pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), raising several issues but stating that in his opinion there are no meritorious issues for appeal. Abdullah has moved to strike his attorney and to proceed pro se. He has filed a pro se supplemental brief in which he claims that he has received ineffective assistance from his counsel at his guilty plea, his sentencing, and on appeal. He also contends that his guilty plea was invalid and requests that his plea be vacated and his case remanded to a different judge.

Counsel first suggests that the government may have failed to disclose an unspecified promise to witness Marion Cheatham, who was serving a probation violation sentence at the time she testified about the December 1992 murders of Oliver and Lewis. <u>See Giglio v.</u>

9

United States, 405 U.S. 150, 154-55 (1972) (when reliability of witness may determine guilt, failure to disclose promise that affects credibility is denial of due process). Counsel states that Abdullah has informed him that Cheatham was released from prison following her testimony in the sentencing hearing. We note that Abdullah's guilt was not an issue after his guilty plea and that the district court did not find that he was implicated in the murders about which Cheatham testified. Therefore, such a vague and unsupported allegation made on appeal is hardly sufficient to undermine his conviction.

Next, counsel suggests that due process required the use of a clear and convincing standard of proof at sentencing rather than the preponderance of the evidence test. As already discussed, this issue is without merit. Counsel and Abdullah (in his supplemental brief) question whether the conduct supporting the sentence enhancements was relevant conduct. We find that it was because all the acts for which Abdullah was held accountable were acts in which he participated or were undertaken by others in furtherance of the conspiracy and were reasonably foreseeable to him and within the scope of his agreement. USSG § 1B1.3(a)(1).

In his pro se supplemental brief, Abdullah first contends that his attorney gave him ineffective assistance in connection with his guilty plea and that his plea was involuntary as a result. He also claims that the district court abused its discretion in refusing to allow him to withdraw his guilty plea. Abdullah alleges that his attorney failed to warn him that he would be considered a career offender and underestimated the sentence he might receive. However, the revised presentence report removed the career offender designation. We note that, like Woodfolk, Abdullah was informed of the maximum sentence and of the mandatory minimum sentence to which he was exposed at the Rule 11 hearing. In any case, the issue of an attorney's competency is better addressed in a motion pursuant to 28 U.S.C. § 2255 (1988), rather than on direct appeal, unless ineffectiveness conclusively appears in the trial record. United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992), cert. denied, 507 U.S. 942 (1993). Because the record does not conclusively demonstrate that Abdullah's counsel was ineffective, we will not address the issue here.

Under the test set out in United States v. Moore , 931 F.2d 245, 248 (4th Cir.), cert. denied, 502 U.S. 857 (1991), the district court did not

10

abuse its discretion in denying Abdullah's request to withdraw his plea. Abdullah did not offer credible evidence that his plea was involuntary; neither did he offer a credible assertion of innocence. His motion to withdraw was made at the sentencing hearing two months after his guilty plea was entered. Abdullah provided no evidence that his attorney had not performed competently on his behalf. An attorney's erroneous estimate of the applicable guideline range does not warrant withdrawal of a guilty plea. United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (in banc), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3460 (U.S. Dec. 12, 1994) (No. 94-6055). Both the government and the district court would have been prejudiced by withdrawal of the plea because numerous witnesses had been assembled for what turned out to be a four-day sentencing hearing. Had Abdullah gone to trial, many of the same witnesses would have had to testify again. In sum, we find that the district court did not abuse its discretion in denying the motion.

In accordance with Anders, we have examined the entire record in this case and find no meritorious issues for appeal. This court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. We therefore deny Abdullah's request to strike his counsel and proceed pro se. We also deny counsel's motion to withdraw at this time. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move again in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client.

Doncarlos Williams

Doncarlos Williams was initially charged only with participating in the K-Mart robbery. On June 1, 1993, Doncarlos Williams made a proffer to the government in hopes of entering into a cooperation plea agreement. A plea agreement was offered to Williams on June 3, 1993, by which Williams was to plead guilty to one count of heroin distribution. This agreement was never accepted. Sometime between June 7 and June 15, the government withdrew the offer of a plea agreement because it doubted the truthfulness of Williams's assertion that his friend, Garcia Gilmore, a police officer, was not involved in the K-Mart robbery.

11

In January 1994, plea negotiations resumed. In April 1994, Doncarlos Williams, Abdullah, Corey Woodfolk, and Corey Johnson were charged in a superseding indictment with participation in the heroin conspiracy. In September 1994, Williams entered into an agreement to plead guilty to participating in the heroin conspiracy and his plea was accepted by the district court.

At his sentencing hearing in March 1995, Williams sought, through new counsel, to enforce the withdrawn June 1993 plea offer. He relied on United States v. Cooper, 594 F.2d 12, 17-20 (4th Cir. 1979), which held that a defendant is entitled to specific performance of a plea agreement offered by the government and withdrawn while the defendant was attempting to accept it. Williams argued that he had relied on the government's offer to his detriment by making a proffer of incriminating information and that, because the government was never able to prove Garcia Gilmore's involvement, the offer was improperly withdrawn. However, the district court found that Cooper did not apply because Williams did not show that he accepted or attempted to accept the government's offer. The court found that Williams had given his proffer in reliance on the government's proffer letter of June 1, 1993, rather than on the unexecuted plea agreement, and had continued his proffer after the government's offer in hopes of getting a better offer. The court found that the unexecuted plea agreement was not enforceable and sentenced Williams according to the agreement he signed in September 1994.

On appeal, Williams argues that the government breached the June 1993 plea "agreement" by withdrawing its offer. Judicial interpretation of plea agreements is governed primarily by the law of contracts. United States v. Martin, 25 F.3d 211, 217 (4th Cir. 1994). Factual questions are reviewed under the clearly erroneous standard while principles of contract interpretation are reviewed de novo. Id. Williams's attorney represented that his failure to accept the June 1993 offer might have been due to time constraints, but no evidence to that effect was presented. As the district court found, there was no evidence that Williams made any attempt to accept the offer before it was withdrawn. His case is thus distinguishable from Cooper, assuming that Cooper retains any validity after the Supreme Court's decision in Mabry v. Johnson, 467 U.S. 504, 507-11 (1984), that acceptance of a proposed plea bargain does not create a right to spe-

12

cific enforcement of the bargain if it is withdrawn by the government prior to entry of a guilty plea. Cf. Plaster v. United States, 789 F.2d 289, 292-93 (4th Cir. 1986) (dicta indicating Cooper was overruled by Mabry). We cannot say that the district court was clearly erroneous in finding that Williams neither accepted the June 1993 offer nor relied on it in making his proffer. Therefore, he was not entitled to specific performance of that offer.

We therefore affirm the convictions of Woodfolk, Abdullah, and Woodfolk and the sentences imposed on Woodfolk, David Williams, and Doncarlos Williams. We deny Woodfolk's motion to strike the Appellee's brief and supplemental appendix. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

13